JAMES H. ROBISON AND FRED. K. MAUS, PLAINTIFFS IN ERROR, v. GEORGE P. UHL, DEFENDANT IN ERROR.

1. **Statute of Frauds.** Under our statute of frauds the delivery of possession of goods sold is not necessary to protect the purchaser as against the creditors of the seller, provided the purchase was made in good faith.

2. ———: By our statute the retention of possession by the seller is, at most, only *prima facie* evidence of fraud, which may be rebutted by proof.

3. ———: FRAUD A QUESTION OF FACT. In all cases arising under our statute, the question of fraud in a sale is one of *fact* and not of law.

ERROR from the district court of Richardson county. It was an action of replevin brought by the plaintiffs in error against the defendant in error for the recovery of a threshing machine which had been purchased by Uhl at an execution sale. Plaintiffs in error claimed title by virtue of a purchase from the defendant in execution prior to the levy. Judgment below by WEAVER, J., in favor of Uhl, and Robison and Maus brought the cause up by petition in error.

*Clarence Gillespie and E. W. Thomas*, for plaintiffs in error.

Between these parties, Brayley and Robison & Maus, there can be no question but that the title to said property had passed from Brayley to Robison & Maus before the levy on the machine by said G. P. Uhl, defendant in error, and that his levy was not made for some time after the sale to Robison & Maus. *Barret v. Turner*, 2 Neb., 172. *Dows v. Green*, 32 Barb., 493. *Fairfield v. Baldwin*, 12 Pick., 387. Smith Ld'g Cases, 1081–2. *Sweeney v. Ownsley*, 14 B. Mon., 413.

The rule that obtained in the days of Buller and Mansfield, that possession of chattels by the seller gave rise to an inference of fraud has been greatly modified, and the question of fraud in all such cases is a question of fact, and this question is thus taken from the courts, who could consider and infer it from a single fact, and left to a jury who should consider all the facts and determine from the evidence whether such possession is consistent with an honest purpose. Gen. Stat. of Neb., 393, 395. *Smith v. Acker*, 23 Wend., 653. *Collins v. Myers*, 16, Ohio, 547. *Babcock v. Eckler*, 24 N. Y., 623. *Monteith v. Bax*, 4 Neb., 166. 1st Parson's Contract, 529. It was not necessary that the possession should have been delivered, as they were already in possession as general agents. *Lake v. Morris*, 30 Conn., 201. *Warden v. Marshall*, 99 Mass., 305. Hilliard on Sales, pp. 101, 102, sections 16, 17, 18. 2d Kent, 12 Ed., page 492, and note.

*George P. Uhl, pro se.*

The plaintiffs in error acquired no title to the property claimed, if it should be considered as true that they bought the property from their principal, for the reason that there was no delivery, and the defendant in error knew nothing of the transaction, if any such transaction as claimed by plaintiffs ever took place. *Lan-*

*fear v. Sumner*, 17 Mass., 110. *Rourke v. Bulleus*, 8 Gray, 549. *Parr v. Parker*, 24 Iowa, 26. *McKibbin v. Martin*, 64 Penn. State, 352. 1 Smith's Leading Cases, 33. There must be a delivery and change of possession or the sale will be void as to the creditors. 1 Parson's Contract, 529. 2 Kent's Com., 312, 513, 518, 521, 522, *et seq*. *Sumner v. Hicks*, 2 Black, 532. *Warner v. Norton*, 20 How., 448.

LAKE, CH. J.

The action in the court below was for the recovery of the possession of a threshing machine.

On the fifteenth of July, 1876, James Brayley, of Buffalo, N. Y., became the owner of this machine by a purchase at judicial sale from the United States marshal for the district of Nebraska, under a judgment recovered by him against one Charles Zeller.

The legal proceedings resulting in this sale were in charge of the plaintiffs, who were the general agents of Brayley in this part of the west, for the sale of this sort of machines. Before the sale came off, it had been arranged between Brayley and the plaintiffs that if it should be struck off to him, they were to take it off his hands at the price bid. As to the amount to be bid in his name Brayley instructed them by letter, dated June 6th, 1876, as follows: "Don't bid in the machine for any more than you would be willing to give for it to sell again," and they accordingly bid $350,00.

Soon after this sale was made Brayley on being advised of the purchase in his name sent a bill of the machine to the plaintiffs, in these words:

"BUFFALO, N. Y., July 21st, 1876.
*Messrs Robison & Maus*, St. Joseph, Mo.

Bought of James Brayley, machine sold on Zeller judgment, bought by you, $350.00.

At the same time he advised them that: "I under-stand that you bid this machine for your own account, and therefore charge it up to you; and as you wrote me that you had authorized your attorney to bid as high as $350.00, I make the bill for that amount. Trusting this will be satisfactory to you. I remain yours truly,

JAMES BRAYLEY.

P. S. Please credit my account above amount, and advise me that you have done so.

J. B.

Brayley's account was accordingly credited the $350.00 on or about the twenty-sixth of July, 1876, of which he was at once advised.

After the sale by the marshal the machine was left in the care of Zeller, who had no knowledge or informa-tion of the transfer of the ownership to the plaintiffs until about the time of the commencement of the replevin suit, on the fourteenth of August following.

In the meantime, and while the machine was still in the hands of Zeller for safe keeping, the defendant, hav-ing recovered a judgment against Brayley, caused an ex-ecution to be levied upon it as the property of Brayley.

This execution was levied on the twenty-ninth of July, and the sale under it took place on the twelfth of the following month, at which the defendant became the purchaser of the machine without any knowledge or in-formation that the plaintiffs had or claimed any interest therein.

These being substantially the facts upon which the jury were to act, the plaintiffs requested the court to charge the jury: " 1. That when the terms of a sale are agreed upon and the bargain is struck, and everything which the seller has to do about the property is com-plete, the contract of sale is then perfect—the ownership of the property vests at once in the buyer, and this he takes at once; the property, and all the risks of acci-

dent to the property is upon the buyer, who is the owner thereof."

"2.   All that is necessary to pass property is that the buyer and seller agree.   If one who has a long course of dealing with another have a correspondence in regard to certain specific property nearer to the purchaser than the seller, and more properly by reason of their business relations in the control of the purchaser, and they agree, one to buy and the other to sell, the sale is complete just so soon as they agree, and the seller charges the buyer, and the buyer credits their respective books with the price of the property."

"6.   If you believe that this was an honest purchase on the part of the plaintiffs, bought in good faith, then you should find for the plaintiffs.   The statute of frauds does not apply if this is a complete trade (and perfected before the levy) between the agents and principal in perfect good faith, and the transfer was completed by the entering of the respective charges and credits on their respective books, the property already being in the custody of the plaintiffs as the agents having the general control of all Brayley's business."

There were several other instructions of similar import to these requested by the plaintiffs, to which however it is unnecessary to refer as these will answer our purpose.   The plaintiffs' requests were all refused and exceptions duly taken.

It is quite evident that the court regarded the strict rule of the common law, which requires the delivery of possession of goods sold as necessary to protect the purchaser as against the creditors of the seller, as applicable here.   In this we think there was error.

By section 11, chapter 25, Gen. Statutes, it is enacted that: "Every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels by way of mortgage or

security upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and shall be conclusive evidence of fraud unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers."

Under the operation of this section it will be seen that the decisions of the courts of those states where the rule of the common law prevails cannot be followed. Under our statute the retention of possession by the seller is, at most, only *prima facie* evidence of fraud, which may be entirely rebutted by the circumstances attending the transaction.

A careful examination of the testimony leaves no room to doubt that as between Brayley and the plaintiffs the sale was completed about the twenty-sixth or twenty-seventh of July, and several days before the defendant's execution was levied upon the property. If this sale were *bona fide* a complete title vested at once in the plaintiffs, leaving nothing on which the execution could operate. That this sale was made in good faith there was considerable testimony to prove, but whether it were sufficient was for the jury, under proper instructions, to find.

But even if the rule as to the possession by the seller were as claimed by the defendant it would by no means necessarily follow that it would have been applicable to the facts of this case. It was shown very conclusively that the plaintiffs were the agents of Brayley, who resided in a distant state; that as such agents they had a gen-

eral supervision of his business in this part of the country, and had attended to the litigation which had terminated in the transfer of the ownership of the machine in question from Zeller to him, but with the understanding they were to take it off his hands at an agreed price. This being the situation of the parties with respect to this property we think the formalities of a delivery of possession would have been of no significance, as it was to all intents and purposes in their control at the time.

We are of the opinion that the foregoing instructions, requested on behalf of the plaintiffs, embody sound propositions of law and were applicable to the evidence upon which the jury were to pass, and that for the refusal to give them a new trial should be awarded.

REVERSED AND REMANDED.