Cruikshank v. Cogswell.

ALEXANDER CRUIKSHANK, Plaintiff in Error, v. ROBERT COGSWELL, Defendant in Error.

ERROR TO LA SALLE COUNTY COURT.

After an appearance and trial, a defendant cannot object to any defect in, or even a want of a writ or attachment bond.

As between the parties, delivery is not essential to the completion of a sale of a chattel; which may remain with the vendor any length of time, if taken by the vendee, before any lien attaches to it in the hands of the vendor, provided the transaction is conducted in good faith.

A delay in taking possession of a chattel after its purchase, is a circumstance calculated to excite suspicion; but is not *per se* evidence of fraud.

THIS was an action of replevin in the cepit and detinet, brought by plaintiff in error against defendant in error to recover a horse. Pleas—1st, Non detinet. 2nd, Property in Wm. D. Briggs. 3rd, Property in defendant. 4th, Property in said Briggs, judgment in favor of John H. Buck, execution issued on the same and placed in the hands of defendant as constable, and levy, by virtue thereof, on the horse in question.

To the first plea plaintiff filed general replication, and to the others replied, property in himself and not in Briggs or defendant.

Trial had, and verdict for defendant. Motion for new trial by plaintiff overruled, and exceptions taken.

Motion in arrest of judgment overruled, and exceptions by plaintiff. Judgment for costs against plaintiff, and order for return of property.

Appeal prayed to Supreme Court, and June 13th, 1859, leave to supply writ, bond and indorsements thereon, the writ and bond having been lost.

Copy of lost bond and writ presented and approved by court, and ordered to be filed as a part of original record.

Bill of exceptions shows that on the trial of said cause the plaintiff introduced as evidence the following bill of sale for the property in question:

*May 1st,* 1857.

ALEX. CRUIKSHANK—*Bought of* W. D. BRIGGS, one dark or black Horse, now being used by him, subject to his (ac.) order at any time. $80.

Received payment, W. D. BRIGGS.

Plaintiff also introduced a witness, who testified that he was in the employ of plaintiff in October, 1858, as stable keeper—that defendant came to the stable and took away the horse—that Briggs was with him—that horse was a dark or black horse, and had been delivered to plaintiff by Briggs some two or

three months before that time. Defendant admitted it was the same horse in controversy.

Another witness testified that he had known the horse in controversy—that Briggs' signature to the bill of sale offered in evidence, was genuine—that plaintiff paid Briggs $80 for the horse—that Briggs told him the horse belonged to plaintiff—that Briggs left at the office of plaintiff a number of small sums of money, amounting in all from $15 to 25, which the plaintiff told witness at the time was for the use of the horse.

*Wm. Mitchell* testified, that in summer of 1858 he kept the horse in controversy for the plaintiff for several weeks. At this point the defendant admitted that the plaintiff had made a demand for the horse before bringing suit.

Defendant then called *Wm. D. Briggs*, who testified that the reason why he gave the possession of the horse to the plaintiff in the summer of 1858 was that the plaintiff had a bill of sale of the horse—that plaintiff told the witness he had been advised the bill of sale would not be good unless he had the possession of the horse under it—and that he gave him the possession of the horse for the purpose of strengthening the bill of sale—that in the spring of 1858 a constable was about to levy upon the horse as his property, and that plaintiff came and said he must have possession of the horse under the bill of sale to make it good, but that the next day he would lead the horse down behind the buggy and he might have him to use again. That the horse was delivered to plaintiff at that time, and he kept him till he was levied upon by the defendant. That the horse in controversy, in May, 1857, was worth $200.

*A. B. Hitchcock*, witness for plaintiff, said it was not worth more than $125 or $130 at that time. *John Gallagher* testified about the same as to the value. *Isaac Hardy*, that it was worth about $80. *James Egan*, for defendant, testified it was worth about $150.

Both parties here closed their case, and no further testimony was offered by either party.

The errors assigned are, that the court erred in giving defendant's instructions to the jury ; that the verdict of the jury was contrary to the law ; that the verdict of the jury was against the evidence ; that the verdict of the jury was against the law and evidence ; that the court erred in overruling the plaintiff's motion for a new trial ; and that the court erred in overruling plaintiff's motion in arrest of judgment.

E. F. BULL, for Plaintiff in Error.

DANIEL EVANS, for Defendant in Error.

CATON, C. J. It is not necessary to investigate the propriety of the action of the court below in supplying that portion of the record which was lost. After appearance and trial, the defendant could not object to any defect in, or even a total want of the writ or the attachment bond.

As between the parties to it, delivery was not essential to the completion of the sale of the horse. It was competent for the parties to agree at the time of the sale that the seller might retain possession of the horse as long as he pleased, and upon any consideration which suited him, and no one but a creditor of, or purchaser from the seller could take advantage of the non-delivery to the purchaser, nor could such creditor take advantage of the non-delivery at the time of the purchase, if the sale was real and *bona fide*, and possession taken before the lien of the creditor attached; and such appears to have been the case here. We find no evidence in the case to show that this sale was merely colorable for the purpose of covering up the seller's property. The price agreed upon, eighty dollars, was paid, in cash, at the time of the sale; the horse remained with the vendor for about a year, who paid the purchaser for the use of him. Three months, at least, before this judgment was obtained, for the purpose of completing the sale, so that creditors of the defendant in execution should not take advantage of the non-delivery, the purchaser took possession of the horse, and ever after held possession till he was taken on this execution, on the same day on which the judgment was rendered. Now the sale was complete as to all the world, when the possession was taken, and was as good and perfect as if the sale and delivery had both occurred at that time. If the sale was not fraudulent in fact, the delay in the delivery did not make it fraudulent in law, as to those whose rights accrued subsequent to the time of delivery. The delay of delivery was a circumstance calculated to excite suspicion of the good faith of the original sale, but by no means sufficient of itself to establish bad faith without other proof. Had a *bona fide* sale and delivery of the horse been made at the time this delivery took place, no one will pretend that a judgment creditor, who obtained his judgment three months afterwards, could seize the horse in satisfaction of his judgment, nor can it be done with any more propriety in this case, unless there was fraud in fact.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*