CELIA M. FRANKLIN ET AL., Respondents, *v.* W. H. GUMERSELL ET AL., Appellants.

### December 20, 1881.

1. A sale of personalty, to be good against creditors of the vendor, must be accompanied by open and notorious change of possession, within a reasonable time.

2. Where such a change of possession is not effected within a reasonable time, that the delivery is made before the process of the creditor is levied, will not validate the sale.

3. Where goods sold to a salesman in the employ of the vendor remain in the vendor's store, and in the course of trade this stock is replenished through purchases made by the vendor with money turned over to him by the vendee, as proceeds of sales of these goods, an attachment against the vendor may be levied on the new goods as well as on the original stock.

4. In such a case, where there is evidence that purchases made to replenish the stock were made by the vendor in his own name and the goods charged against the vendee upon the vendor's books, an attaching creditor of the vendor, when sued by the vendee for the value of these goods attached, is entitled to use in evidence such portions of the vendor's books as relate to the purchase of the goods and to his dealings with the vendee.

5. The testimony of a witness may be read from a bill of exceptions preserved at a former trial whenever, without any fault of the party desiring the testimony, the attendance of the witness cannot be had nor his deposition taken.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Reversed and remanded.*

G. M. STEWART and PAUL BAKEWELL, for the appellants :
The original transaction of June, 1877, whereby Carabin &
Co. attempted a sale to plaintiff of certain of their goods,
having been declared void by this court, all that followed
as a direct result in pursuance of that transaction was also
void as to these defendants. The plaintiff had no better
title to the proceeds than to the original goods. — *Martin v.
Smith*, 1 Dill. 84 ; *Buck* v. *Ashbrook*, 59 Mo. 200. She
could not change the title to the goods by changing their
character. — *Cheeny* v. *Gleason*, 117 Mass. 557 ; *Small* v.
*Atwood*, 1 Young, 507 ; *Thompson* v. *Bickford*, 19 Minn.
17 ; *Spaulding* v. *Fisher*, 58 Me. 411. Defendants had a
right to have submitted to the jury all the plaintiff and her
agents said and did respecting these transactions, as they
are of the *res gestœ.* — *Singleton* v. *Mann*, 3 Mo. 464 ;
*Beardslee* v. *Steinmesch*, 38 Mo. 168 ; *McNeeley* v.
*Hunton*, 24 Mo. 281 ; *Bank* v. *Williams*, 46 Mo. 17 ;
*Association* v. *Edwards*, 47 Mo. 445. The testimony of
Ravold as preserved at the former trial should have been
read to the jury. — *Slusser* v. *Burlington*, 47 Iowa, 300 ;
*Cook* v. *Stout*, 47 Ill. 530 ; *Johnson* v. *Sargent*, 42 Vt.
196 ; *Clinton* v. *Estes*, 20 Ark. 216 ; *Magill* v. *Kauffman*,
4 Serg. & R. 317 ; *Wright* v. *Ampsty*, 41 Pa. St. — ; *Noble*
v. *McClintock*, 6 Watts, 58 ; *Widder* v. *City of St. Paul*,
12 Minn. 192. The issue was really a trial of the title to
the property ; and having notice, and being in fact present
at the trial, and by her testimony endeavoring to establish
her title to this property, she ought to be permitted to try
the same issue again. The cases of *The State* v. *Coste*, 36
Mo. 437 ; *Strong* v. *Insurance Co.*, 62 Mo. 295, and
*Whittaker* v. *McCormick*, 6 Mo. App. 114, are decisive of
this question. The case is *res judicata,* and the maxim
" *interest republicœ ut sit finis litium,*" has full applicati n
here.

McComas & McKeighan, for the respondents: 1. The court committed no error; the case was tried, and instructions given with close observance of the decision of this court in the same case. 2. The books of J. J. Carabin were properly excluded. They contained no declarations of the plaintiff. 3. The question of whether or not the goods purchased subsequent to the original purchase, June 17, 1877, were bought of persons other than Carabin & Co., was fairly submitted to the jury; the jury, by their verdict, decided in favor of the plaintiff; there was evidence tending to sustain the result, and the appellate court will not disturb the opinion of the jury on a question of fact. 4. The question of fraud on the part of the plaintiff and Carabin & Co., was submitted to the jury, and the jury found there was no fraud on the part of the plaintiff. This court will not oppose the verdict of a jury on such a subject, and declare there was. 5. The evidence all shows that the plaintiff paid full value for the goods originally bought; that she paid for all the goods she bought afterwards, and that none of her creditors suffered by the failure of J. J. Carabin & Co. By reason of not being familiar with the statute of delivery, she lost her honest claim to the balance of the stock; but this misfortune does not prevent her from purchasing and owning property unaffected by this statute.

BAKEWELL, J., delivered the opinion of the court.

This case has been here before. The plaintiff, Celia M. Franklin, claims that defendants unlawfully seized and carried away certain personal property belonging to her, and converted the same to their own use. The defendants, after a general denial, pleaded that they caused the goods to be taken in attachment as the property of Carabin & Co., who were indebted to defendants. The ground of the attachment was a fraudulent conveyance by Carabin & Co. The issue on the plea in abatement in the attachment

suit was found for the defendants, who were plaintiffs in that action, the jury finding that the goods in question in this suit had been, by Carabin & Co., fraudulently conveyed to Celia M. Franklin. On the judgment in that action execution issued, under which these goods were sold, and the proceeds applied on the execution. The answer further alleges that Celia M. Franklin testified as a witness in that attachment suit. The reply admits that the issues in the attachment suit were as stated in the answer, and that the levy and judgment were as stated. There was a verdict and judgment for plaintiff in the suit at bar.

1. It appears from the testimony that, in February, 1877, Carabin & Co. opened a store in St. Louis for selling at retail millinery and women's and children's wearing apparel. Plaintiff was one of the saleswomen in Carabin's store. She had come to St. Louis with Carabin and his partner, and had been formerly a co-employee with them in a store in another city. About four months after Carabin & Co. began business in St. Louis, plaintiff, who came to St. Louis with $100 in her pocket, and who was receiving a salary of only $50 a month, bought, according to her statement, of Carabin & Co., the ladies' underclothes and baby clothes in Carabin's shop, for $1,700. She says she paid $1,000 in cash, which money she borrowed from a person in Detroit; and she gave her notes for the balance, and, Carabin & Co. being in want of money, she paid these notes before maturity. The goods were described in a bill of sale and invoice dated June 17, 1877, the date of the alleged sale. On February 2, 1878, Carabin & Co. made an assignment for the benefit of their creditors, and, from the date of the alleged transfer to the day that Carabin & Co. failed, plaintiff, who was then Celia Preston, and who has married her co-plaintiff since these transactions, remained as a saleswoman in the Carabin store, at the same salary, and selling goods for Carabin & Co., as well as those goods which she claims were her own. There was nothing what-

ever from which an observer could guess that these goods, which she says were hers, were plaintiff's goods and not Carabin's. Plaintiff put no new marks on the goods. As she sold them she turned the money into the Carabin cash-drawer. She had a separate counter for her goods, removed about three feet from the Carabin counter, and in the southeast corner of the shop. She kept the goods which she called her own under this counter. When she bought new goods to replace those that were sold, she bought them, she says, through Carabin & Co., except as to one or two small bills, one of which was originally made out to Carabin & Co. and afterwards made out to her. She says that she kept a memorandum of what money she put in the Carabin cash-drawer for her own sales, and that Carabin ordered her goods for her in New York in his own name. The tags of Carabin & Co. remained on most of these goods up to the time that she removed them when Carabin & Co. failed. Carabin & Co. seem to have charged the goods to her on their books, and to have credited her account with the moneys she put in the cash-drawer, just as they would have done in case of a saleswoman who had special charge of their goods of a certain character, and who was responsible for goods not sold, receiving a commission on sales in addition to a salary. The books of Carabin & Co. were not in evidence. They were offered by defendant and excluded by the court. Plaintiff was selling this class of goods for Carabin & Co. before her alleged purchase. Plaintiff ordinarily sold for cash; but she says that if she ever gave credit, the purchaser was charged on the books of Carabin & Co. She had a settlement with Carabin & Co., for the first time, just before they failed. Samples of all the goods which she sold were displayed on the show case on the street, together with Carabin's goods. A few days before Carabin & Co. failed, plaintiff hung over her counter a sign with her name on it. When Carabin & Co. failed, they owed for some of the

goods in question in this suit. On the evening before Carabin & Co. made an assignment, plaintiff boxed up those goods and removed them to an adjoining store, where they were attached at defendant's suit, as belonging to Carabin & Co. Plaintiff and Carabin estimated the goods as worth, when seized, about $1,700. Plaintiff claimed them and defendants gave bond. They sold, at sheriff's sale, for $562. At the time of their failure, Carabin & Co. owed defendants $750 for millinery goods bought of them. Defendants did not know, till after the assignment, that there had been any claims of ownership by plaintiff, or any one else than Carabin & Co., to any wares on sale in their shop. The small quantity of goods which plaintiff did not buy of or through Carabin & Co. were mixed by her with the other goods under her counter; and when she claimed from the sheriff, she made no separate claim for them.

When the case was here before, we held the sale from Carabin & Co. to Mrs. Franklin void as to creditors, for want of proper delivery, and that it was not validated by the removal of the goods the night before the Carabin failure. As to the goods mixed with those alleged to have been bought from Carabin & Co., we held that, as they had been, by plaintiff's fault, mixed with those of the execution creditor, the burden was on plaintiff to make the separation.

The original sale of Carabin & Co. to plaintiff was clearly void as to the creditors of that firm, and so we have held. All the goods levied upon at the suit of defendants, except as to some small amount, less than $100 worth, purchased of a Detroit house by plaintiff, were, either these goods, or those goods which, on plaintiff's theory of the case, had been purchased by her through Carabin & Co. to replace those sold, and with the proceeds of those goods.

There was evidence in the case from which, if the jury had found that Mrs. Franklin bought these identical goods in question from Carabin & Co., the verdict ought not to

have been disturbed as having no evidence to support it. But, taking the plaintiff's own view of the transaction, we do not see how she makes out her case. The sale to Mrs. Franklin in June was void as against the defendants, creditors of Carabin & Co., because there was no actual and continuous change of possession. Her possession was good, except against process on the part of a creditor of Carabin. As against process on the part of defendants as creditors of Carabin, it was not good. But if the identical goods sold in June were being changed off, little by little, by the process we have described, it would seem that the possession of the goods which took their place in the course of trade, under the circumstances of this case, was no better. These goods were bought with the money obtained through the sale of those goods, and, from first to last, under circumstances which would lead those dealing with Carabin & Co. to give credit to them as being the owners of the goods. Whether Carabin & Co. were, as Mrs. Franklin claims, merely a conduit through which she obtained from New York, goods, with money obtained from sales out of the original stock to keep it up, or whether, as their books say, they bought the goods in New York and sold them to Mrs. Franklin, retaining, as they did, the outward possession of them, or whether Mrs. Franklin was their mere saleswoman, selling their goods on commission, can make little difference, if we are to look at the equity of the statute and the mischief which it is intended to prevent. The statute has always been interpreted in Missouri to require such a change as shall do away with the risk of the seller deriving a false credit from the continuance of his apparent ownership. And we think, that where A sells goods to his clerk, B, who continues to sell them in A's store, without any open and visible change of possession, if the stock thus purchased be replenished in the course of trade through purchases made by A with the money turned over to him by B, the proceeds of sales of these goods, a judgment creditor of A, or one

who obtains process against A by proceedings in attachment, may have satisfaction for his claim against A, as well out of the new goods as out of the original stock. The last, as well as the first, transaction ought to be looked upon as a sale by A of goods under his control, which, not being followed by the change of possession required by the statute (Rev. Stats., sect. 2505), is fraudulent and void as against the creditors of A. Such a transaction is probably intended to deceive, and certainly will deceive, those trading with the insolvent A, into giving him credit on the faith of these goods.

2. We do not set out and comment upon the instructions given and refused, as they were quite long. But the following instruction was asked by defendants, and refused; and we think that it was warranted by the evidence, and is not replaced by any instruction given; it should not have been refused: —

If the jury find from the evidence that the goods, or any of them, the value of which is sued for in this case, were ordered by the firm of J. J. Carabin & Co. in their own name, and were invoiced or billed and sent to said firm, and were by said J. J. Carabin & Co. charged on its books to the said Celia M. Franklin, then Preston, with her knowledge and consent; that as she made sales of said goods she turned over the proceeds of the same, or a statement of the amount of the same, to said firm, and was credited with the same on the books of said firm, and that she finally settled with said firm, on the basis of the entries made in the books of said firm in respect of such transactions, then they are instructed that from these facts they may find that all of the goods so purchased, and the value of which is sued for in this case, were purchased of J. J. Carabin & Co."

3. Though, from the view that we take of the law of this case, it is manifest that the judgment must be reversed, it is not necessary for us to pass upon all the questions pre-

sented as to the admission or exclusion of evidence. We think that if the offer is made in a proper way, defendants are entitled to put to the jury such parts of the books of Carabin & Co. as have to do with their dealings with Mrs. Franklin and their purchase or sale of the goods in question.

4. So far as the exclusion of the testimony of the witness Ravold as preserved in the former bill of exceptions goes, it is only necessary to say that, where there is a proper showing of diligence, and it is impossible to have the living witness, and without any fault, his deposition has not been taken, the rule as to admitting the testimony of a witness given at a former trial applies. We do not think it is to be confined exclusively to the case of the death of the witness. Where he might have been had, however, or his testimony should, with proper diligence, have been taken by deposition, the other side may well object to the replacing testimony in the ordinary form by the record of statements of the witness at a former trial. *Clinton* v. *Eites*, 20 Ark. 216, 235.

The judgment is reversed and the cause remanded. Judge THOMPSON concurs; Judge LEWIS is absent.