Decided at PENDLETON, July 20, 1895.

## RULE v. BOLLES.

[41 Pac. 691.]

1. REPLEVIN — RECORD OF BRAND AS EVIDENCE OF CHANGE OF POSSESSION.— A certified copy of the record of a brand adopted by the owner of certain stock upon purchasing it is competent for the purpose of showing a change of possession of such animals.

2. PRESUMPTION OF FRAUD — INSTRUCTION.— An instruction that a sale of personal property capable of delivery, unless followed by actual change of possession, creates a presumption of fraud as against the seller's creditors, disputable only by making it appear that the same was made in good faith, for a sufficient consideration, without intent to defraud, and that such presumption may be overcome by any evidence which satisfies the jurors' minds to the contrary, is not objectionable.

3. HARMLESS ERROR.— An erroneous instruction as to the manner of overcoming the presumption of fraud arising from a sale of personal property capable of delivery without an actual change of possession is harmless where the jury find that the purchaser took actual possession of the property.

APPEAL from Union: JAMES A. FEE, Judge.

This is an action by Eliza Rule to recover the possession of fifty-seven head of horses from J. T. Bolles. The complaint is in the usual form. The defendant, who was the sheriff of Union County, justifies the taking and detention of the property in question by alleging that it was seized by him as the property of Robert S. Rule, the husband of the plaintiff, under a writ of attachment issued in an action against him by one Horner. The reply puts in issue the allegation of ownership in the answer, and upon the issues thus made the cause was tried. The evidence produced on the trial tended to show that in March, eighteen hundred and ninety-three, the plaintiff purchased of her husband, with whom she was then living, the horses in question, and that after such purchase she had them gathered up from the range, the brand with which they were marked recorded as her horse and

cattle brand, and she and her sons subsequently took care of them; that some time before they were attached she had them driven from Sand Hollow, Morrow County, to Gibbon, in Umatilla County, from which point, accompanied by her husband, she started to drive them east to find a market, and while passing through Union County in July, eighteen hundred and ninety-three, they were seized by the defendant; that before starting with the horses for Morrow County, in June or July, eighteen hundred and ninety-three, she had them assessed by the sheriff as her property, and paid the taxes thereon, but she subsequently learned that the sheriff, without her knowledge, listed them as the property of her husband. There was testimony for the defense tending to show that up to the time the horses were taken from Morrow County, in June or July, eighteen hundred and ninety-three, the husband was the reputed owner thereof; and that in the presence and with the knowledge of his wife he had exercised acts of ownership over them. There was also a question under the evidence as to whether the horses were in possession of the plaintiff or her husband at the time of the attachment. There was a judgment for plaintiff, and defendant appeals.    AFFIRMED.

For appellant there was a brief by *Messrs. Bailey, Balleray and Redfield,* and an oral argument by *Mr. John J. Balleray.*

For respondent there was a brief by *Messrs. J. H. Slater and Sons,* and an oral argument by *Mr. J. T. Slater.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The record contains numerous assignments of error, but none of them are sufficient, in our opinion, to require a reversal of the judgment. It is claimed that

the court erred in admitting in evidence a certified copy of the record of the brand recorded by plaintiff, for the reason that the ownership of a brand is no evidence of ownership of stock branded therewith. But the record shows it was not admitted for such purpose, but only as one of the circumstances tending to show a change of possession of the horses so branded, and for that purpose, under the circumstances of this case, it was entitled to go to the jury for whatever they might consider it worth.

2. The defendant also requested the court to charge the jury that "every sale of personal property capable of immediate delivery to the purchaser, unless the same is accompanied by immediate delivery, and followed by an actual and continued change of possession, creates a presumption of fraud as against the creditors of the seller, disputable only by making it appear on the part of the person claiming under such sale that the same was made in good faith, for a sufficient consideration, without intent to defraud such creditors." The court gave the instruction as asked, but added thereto the following: "This presumption is subject to the same rule as the former. It may be overcome by any evidence that satisfies your minds to the contrary." It is claimed that it was error to so modify the instruction requested. The objection is that by the instruction as given the jury were at liberty to find that the presumption of fraud arising from a want of delivery could be overcome by any evidence which to them seemed satisfactory, while the statute provides that such presumption is disputable only by showing "that the sale was made in good faith, for a sufficient consideration, without intent to defraud such creditors." But it seems to us that when the entire instruction is considered it is not properly subject to the objection urged. By it the

jury are first told that the presumption of fraud is dis-
putable only by making certain things appear, and then
that it may be overcome by any evidence "which satis-
fies your minds to the contrary," that is, that any evi-
dence which satisfied the minds of the jury that the sale
was made in good faith, for a sufficient consideration,
and without intent to defraud creditors, was enough. It
was only evidence of such facts, which, under a rule of
law as laid down by the court, could be "to the con-
trary"; and hence, by reference to what preceded, the
language used is in effect that evidence satisfying the
minds of the jury that the sale was made in good faith,
for a valuable consideration, and without intent to de-
fraud creditors, was sufficient to overcome the presump-
tion of fraud arising from the want of a change of pos-
session.

3.   But whether this is a proper construction or not,
the error was harmless, because the court instructed the
jury, at the request of the defendant, that if, at the time
of the seizure by the defendant under the writ, the hus-
band of plaintiff was in possession of the horses, or ex-
ercising acts of ownership over them, and the sheriff
had no notice of plaintiff's claim, the attachment was
valid; and, as the jury found for plaintiff, they must
necessarily, under this instruction, have found that the
property was taken from the possession of plaintiff, and
not her husband, and therefore the question as to the
presumption of fraud declared by the statute was imma-
terial.   The retention by the vendor of the possession of
personal property capable of immediate delivery raises
only a presumption of fraud, but this presumption con-
tinues no longer than while the property remains in the
possession of the vendor; and if, as the jury found, the
possession of the horses in dispute had been delivered to
and they were under the supervision and control of the

plaintiff, at the time the defendant attached them, there was no room for the application of the rule referred to. It was only important, in view of defendant's contention that there never had been a change of possession, and that question having been submitted to the jury, and they having found against the defendant, any error committed by the court in instructing on the assumption that the possession remained in the husband was harmless. This view disposes of all the other assignments of error, and sustains the judgment of the court below. The case seems to have been submitted to the jury on the theory that if the property was in possession of the plaintiff's husband at the time it was attached, she could not recover, whether she had purchased it in good faith or not. This was certainly as favorable to the defendant as he could reasonably ask, and under the verdict rendered any error committed by the court in instructing the jury in reference to the presumption of fraud arising from the want of delivery immaterial.

The defendant requested the court to charge the jury that the property of a married woman is to be deemed the property of her husband, unless she makes and records a descriptive list thereof as provided in section 3000 of Hill's Code, which the court gave, with the modification that "this presumption, however, may be overcome by any evidence that satisfies your minds to the contrary." The objection to this instruction as so modified is that the court did not tell the jury that there must be evidence to the contrary to overcome the presumption, but left them to infer that anything which they might consider evidence would be sufficient, if it satisfied their minds. It is claimed the instruction should have been that the presumption declared by the statute from a failure to record a descriptive list of her property by a married woman may be overcome "by any evidence to the

contrary which satisfies the minds of the jury." But this position, it seems to us, is too hypercritical to receive judicial sanction. The instruction would be in substance the same in both cases, and, so far as the rule of law applicable to this case is concerned, it is immaterial whether the jury were told the presumption "may be overcome by evidence which satisfied their minds to the contrary," or "by evidence to the contrary which satisfies their minds." To a literary critic one expression may be more accurate than another, but for all practical purposes they amount to the same thing.

AFFIRMED.

Decided at PENDLETON, July 20, 1895.