Belknap, }
Nov. 5, 1902. }

### WEEKS *v.* FOWLER, *Trustee.*

A state court has concurrent jurisdiction of an action of trover to determine the title to property taken by a trustee in bankruptcy as a part of the bankrupt's estate.

A secret trust arising from the vendor's retention of possession of the property sold does not render the sale voidable by his attaching creditor, if the vendee has taken and retained possession of the property prior to its attachment.

Where the formalities usually attending a sale of a stock of goods are followed by unmistakable and notorious acts of ownership on the part of the vendee, the facts that the vendor and his former servant assisted in a closing-out sale, and that the original signs were permitted to remain in position, do not show as matter of law such retention of possession by the vendor as to render the sale voidable by his creditors, nor preclude a finding of possession by the purchaser as a matter of fact.

TROVER, for store fixtures. The defendant is trustee in bankruptcy of the estate of John P. Clay & Son. Trial at the March term, 1902, of the superior court, before *Young*, J.

The plaintiff bought the fixtures of the Clays, March 15, 1900, and gave them credit for the price upon an existing debt. The Clays were to have the possession and use of the fixtures until the plaintiff was ready to take them away. About August 18, 1900, the plaintiff discovered that the Clays were insolvent; and on that day he and two other creditors, in good faith, purchased the Clays' stock in trade, consisting of provisions, at an appraisal, for the purpose of securing as much as possible of their indebtedness to the purchasers. The plaintiff took possession of the stock for the benefit of the purchasers, and of the fixtures for his own benefit, and retained it until it was taken from him by the defendant, if possession and retention thereof can be found from the following facts: An inventory of the stock was taken, and the goods and fixtures were turned over to the plaintiff, who took possession of, and locked, the building in which they were kept. The store was closed from August 18 to August 21, and was opened on the latter day for a special sale of the goods. The plaintiff employed one of the Clays and one of their employees to assist him in selling out the stock. The Clays' sign was not removed from the windows, nor from the bulletin board on which the special sale was advertised. The plaintiff was in and out of the store while it was open, in charge of the business. The goods and fixtures were attached as the property of the Clays, at a time when the plaintiff was absent from the store, and subsequently went into the possession of the defendant. Upon these facts the court found for the plaintiff, and the defendant excepted.

*Edwin H. Shannon*, for the plaintiff.

*George B. Cox* and *Napoleon J. Dyer*, for the defendant.

CHASE, J. This action, being trover, is within the jurisdiction of the state courts. *Truda* v. *Osgood, ante*, p. 185.

The principal question raised by the exception is, whether the sale of the fixtures to the plaintiff was valid as against Clay & Son's attaching creditors. By the agreement of sale, Clay & Son were to have the possession and use of the fixtures until the plaintiff got ready to take them away; and Clay & Son in fact had such possession and use for a period of more than five months subsequent to the date of the sale. No explanation of these facts was given. If nothing further appeared relating to the possession, these facts would establish the existence of a secret trust in favor

of the vendors, and would render the sale fraudulent in law and void as against attaching creditors.  *Coburn* v. *Pickering*, 3 N. H. 415.

But it further appears that, on August 18, the plaintiff took possession of the fixtures, together with the stock of goods purchased by him and other creditors of Clay & Son on that day, and .that he .retained the possession until it was taken from him by the defendant, if possession and retention thereof can be found from the facts reported.  No attempt was made by creditors or by the defendant to avoid the sale until August 21 or later.  If, prior to such attempt, the plaintiff received actual, open, visible possession of the fixtures and subsequently retained it, the secret trust would terminate and the sale would be purged of its fraudulent character.  It is only to prevent creditors from being deceived by false appearances, and consequently defrauded, that the law infers the existence of a secret trust in favor of the vendor when he retains possession of chattels after a sale and offers no explanation for the inconsistency of his acts.  When the false appearances cease, creditors no longer require the benefit of the rule to protect their rights.  They then have notice of the vendee's claim to the property, and must govern themselves accordingly.  *Albee* v. *Webster*, 16 N. H. 362, 370; *Smyth* v. *Carlisle*, 17 N. H. 417; *Mandigo* v. *Healey*, 69 N. H. 94; *Kendall* v. *Samson*, 12 Vt. 515; *Ward* v. *Camp*, 67 Vt. 461; *Gilbert* v. *Decker*, 53 Conn. 401.

The question then arises whether the facts reported are sufficient to show such a change of possession on August 18 and subsequently as the law requires, to render the sale valid.  If they are sufficient as matter of law, or if they are sufficient to justify the finding of such change as matter of fact, the sale must be upheld as against the defendant.  The only facts tending to show that the change of possession was not actual, open, visible, notorious,— all that was possible,— are the employment of one of the vendors and one of their servants to assist in selling the goods, and the allowance of the vendors' signs to remain in the positions they occupied before the sale.  Aside from these facts, it appears that the goods and fixtures were turned over to the plaintiff, presumably by Clay & Son; that an inventory of the goods was taken; that the plaintiff had possession of the building in which the property was located; that the store was closed between August 18 and August 21; that a special closing-out sale of the goods was then begun; and that the plaintiff was in and out of the store, in charge of the business, while the sale was in progress.  Not only were the formalities usually attending a sale of such property complied with, but they were followed by unmistakable and notorious acts of ownership on the part of the vendees.  The

most that can be said concerning the facts first mentioned is that they have a tendency to conflict with the latter facts in respect to the change of possession. They do not necessarily show that the vendors still retained possession in whole or in part. Whatever possession one of them and the former servant had, while assisting in selling the goods, was the possession of the plaintiff. They were his servants. Their true relations to him and the goods would be likely to appear from the presence of the plaintiff and his control of the business, the unusual nature of the sale, the absence of one of the vendors, and other circumstances surrounding their acts. The failure to remove the signs was competent evidence tending to prove that there had been no change of possession, but it was not conclusive; it might be explained, and its tendency be repelled by other evidence throwing light upon the transaction. *Seavy* v. *Dearborn*, 19 N. H. 351, 356. Nor do these facts introduce into the question of possession elements of such doubtful nature (the true character of which it is so difficult to prove) that the law, in the exercise of a wise policy, ought to lay hold of them, and, presuming that they have a tendency to prove a retention of possession by the vendors, decide the question upon a consideration of them and such presumption, entirely ignoring all other facts. When they are considered in the light of the surrounding circumstances, their true character is almost certain to appear.

Two cases are relied upon by the defendant to sustain the proposition that the facts reported show, as matter of law, that the change of possession was insufficient,— *Sanborn* v. *Putnam*, 61 N. H. 506, and *Harrington* v. *Blanchard*, 70 N. H. 597. Although there is much similarity between these cases and the present case, there are differences which, though small, are very material and distinguish the cases from this one. In both of the cases the business was carried on after the sale the same as before, while in this case a significant change was made — a closing-out sale was begun. This change was likely to attract attention, especially as the business was that of selling provisions. In *Sanborn* v. *Putnam*, the vendee was employed in the business prior to the sale, and it was found as a fact that there was no visible change in the possession of the property; while in this case the plaintiff, so far as appears, had no connection with the business before he became a purchaser, with others, of the stock of goods. Whatever possession the plaintiff then received and subsequently retained was entirely new. In *Harrington* v. *Blanchard*, there was no manual delivery of the stock; while in this case the goods and fixtures were turned over to the vendee, and he took charge of the business, and was in and out of the store.

Upon the facts reported, it cannot be held as a matter of law that there was not sufficient change of possession on August 18 and subsequently to render the sale valid as against the vendors' creditors, nor that there was not sufficient evidence to support the finding of possession, as a matter of fact.

This conclusion renders it unnecessary to consider the question, whether the defendant, being a trustee in bankruptcy of the estate of Clay & Son, instead of an attaching or judgment creditor, could avail himself of the rule of law laid down in *Coburn* v. *Pickering*, 3 N. H. 415, and like cases, to avoid the sale if the change of possession were insufficient. *Thompson* v. *Esty*, 69 N. H. 55; *In re Mullen*, 101 Fed. Rep. 413; U. S. St., 1898, c. 541, s. 70.

*Exception overruled.*

All concurred.