WESTERN MINING SUPPLY CO., RESPONDENT, *v.* QUINN ET AL., APPELLANTS.

(No. 2,730.)

(Submitted November 29, 1909. Decided December 15, 1909.)

[105 Pac. 732.]

*Conversion—Complaint—Sufficiency—Fraudulent Conveyances —Personal Property—Immediate Delivery.*

Conversion—Complaint—Sufficiency.
  1. The allegation in a complaint in an action to recover damages for the conversion of property seized and sold by defendant, as sheriff, on attachment, that at the time of the seizure plaintiff's predecessors were the owners and in possession of it and continued to be theirs until sale thereof by defendant, was sufficient.

Same—Personal Property—Fraudulent Conveyances—Immediate Delivery—What may Constitute.

2. *Held,* that delivery of the key to a warehouse, standing on leased ground, which, together with its contents, consisting of heavy machinery, lumber, etc., had been sold to plaintiff in an action in conversion, constituted a sufficient delivery of the property sold, so as to prevent the presumption that the sale was fraudulent, the vendor not having exercised any act of ownership or control over any of the property thereafter.

Sales—Personal Property—Delivery—Attaching Creditors.

3. A *bona fide* sale of personal property, though not accompanied by an immediate delivery, was not void as to an attaching creditor of the vendor, where the vendee took and retained actual possession of it before the institution of the attachment suit.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by the Western Mining Supply Company against John J. Quinn, sheriff, and others. From an order granting plaintiff a new trial, defendants appeal. Affirmed.

For Appellants, there was a brief by *Mr. James E. Healy* and *Mr. C. M. Parr,* and oral argument by *Mr. Healy.*

The complaint does not state a cause of action. No conversion is charged through the "taking," or at the time of the taking; impliedly, at least, the taking was acquiesced in by plaintiff, or its alleged predecessors in interest. In conversion, the plaintiff must allege a concurrence both of a right of property, general or special, and the actual possession, or the right of immediate possession, and this concurrence must exist at the time of conversion. (*Citizens' Bank* v. *Tiger Tail Land Co.,* 152 Mo. 145, 53 S. W. 902; *Gaskill* v. *Barbour,* 62 N. J. L. 530, 41 Atl. 700; *Mount* v. *Cubberly's Exrs.,* 19 N. J. L. 124; *Irving* v. *Hubbard,* 12 S. D. 67, 80 N. W. 156; *Babcock* v. *Caldwell,* 22 Mont. 460, 56 Pac. 1081.) Where the plaintiff was not in possession of the property at the time of conversion, it must be alleged that he was entitled to immediate possession. (*Kennett* v. *Peters,* 54 Kan. 119, 45 Am. St. Rep. 274, 37 Pac. 999; *Smith* v. *Force,* 31 Minn. 119, 16 N. W. 704.)

There is no allegation that plaintiff or its alleged predecessors ever protested in any way against the taking of the property by the sheriff. (*Stevens* v. *Curran,* 28 Mont. 366, 72 Pac. 753.)

The theory, followed out by plaintiff throughout the case, was: that inasmuch as plaintiff's predecessors were in possession before levy of attachment, that was enough. Such theory was error. A sale of personal property unaccompanied by immediate delivery is void as to creditors, though delivery be made before levy. (*Watson* v. *Rodgers,* 53 Cal. 403; *Edwards* v. *Sonoma Bank,* 59 Cal. 149; *Ruggles* v. *Cannedy,* 127 Cal. 300, 53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371; *Stewart* v. *Hoffman,* 31 Mont. 184, 77 Pac. 689, 81 Pac. 3.) What constitutes an immediate change of possession is a subject of a good deal of controversy at times, we recognize, but in this case, and under the evidence herein, there was no compliance, or even attempted compliance, with the statute in this regard. (*Love* v. *Hall,* 21 Okl. 347, 96 Pac. 623.) The possession which the purchaser is required to take of the property sold, in order to render the sale valid under the statute, must be open, notorious and unequivocal. A joint or concurrent possession with the vendor is insufficient. (*Allen* v. *Massey,* 17 Wall. 351, 21 L. Ed. 542; *Dooley* v. *Pease,* 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457; *Swartsburg* v. *Dickerson,* 12 Okl. 566, 73 Pac. 282; *Stewart* v. *Hoffman,* 31 Mont. 184, 77 Pac. 689, 81 Pac. 3; *Ettien* v. *Drum,* 32 Mont. 311, 80 Pac. 369; *Johnson* v. *Emery,* 31 Utah, 126, 86 Pac. 869.)

Actual change of possession of personal property, as distinguished from that which by mere intendment of law follows the transfer of title, is not a difficult solution; it is an open, visible change manifested by such outward signs as render it evident that the possession of vendor has wholly ceased. (*Cahoon* v. *Marshall,* 25 Cal. 197-202; *Bell* v. *McClellan,* 67 Cal. 283, 284, 7 Pac. 699.)

The burden of proving that the plaintiff's ownership was not constructively fraudulent, and that plaintiff and its alleged predecessors had legally acquired the title was upon the plaintiff, and not upon the defendants. (*Stephens* v. *Hallstead,* 58 Cal. 193; *Grum* v. *Barney,* 55 Cal. 254.)

*Messrs. Maury & Templeman,* and *Mr. J. O. Davies,* submitted a brief on behalf of Respondent; *Mr. H. L. Maury* argued the cause orally.

There is but one question that is worthy of serious argument, viz.: Is a sale of personal property void, when delivery takes place not forthwith and coincident upon the consummation of the sale, but actual, open, notorious possession is taken by the buyer, before a levy, at the suit of another creditor? The overwhelming weight of authority answers this inquiry in the negative. (See *Bartlett* v. *Williams,* 1 Pick. (18 Mass.) 288; *Markey* v. *Umstattd* (1893), 53 Mo. App. 20; *Toney* v. *Goodley* (1894), 57 Mo. App. 235; *Halderman* v. *Stillington* (1895), 63 Mo. App. 212; *Kendall* v. *Samson,* 12 Vt. 515; *Sydnor* v. *Gee,* 4 Leigh (Va.), 535; *McKinley* v. *Ensell,* 2 Gratt. 333; *Carr's Admrs.* v. *Glascock's Admrs.,* 3 Gratt. 343; *Gilbert* v. *Decker,* 53 Conn. 401, 4 Atl. 685; *Blake* v. *Graves,* 18 Iowa, 312; *Brown* v. *Glathary,* 4 La. Ann. 124; *Kirby* v. *Busch,* 15 Ky. Law, Rep. 238.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced by the plaintiff, a corporation, against John J. Quinn, the surety on his official bond as sheriff of Silver Bow county, and C. M. Parr, to recover damages for the conversion of certain goods and chattels alleged to belong to the plaintiff. The property consists of a warehouse and certain mining machinery, lumber, etc., which was seized by Quinn, the sheriff, on July 8, 1905, by virtue of a writ of attachment issued in an action wherein Parr was plaintiff, and the Shackleton & Whiteway Construction Company was defendant, and afterward sold by order of the court. In the district court the defendants recovered judgment upon a general verdict in their favor. The plaintiff moved for a new trial, which was granted, and the defendants appealed from the order.

1. It is contended that the complaint does not state facts sufficient to constitute a cause of action. The complaint alleges that

at the time of the seizure of the property the predecessors of plaintiff were the owners and in possession of all the property, and that such property continued to be theirs until the sale thereof by defendant Quinn. While this pleading is not a model, we think it is sufficient. The seizure of one's property to satisfy a claim of another is a conversion of the property, irrespective of the designation given such seizure in the complaint.

2. The plaintiff claims that its predecessors in interest purchased the property from the Shackleton & Whiteway Construction Company before the seizure by Quinn. But it is urged by defendants that the evidence is insufficient to show such a delivery and change of possession as is necessary to satisfy our statute. The testimony discloses that the warehouse is personal property situated at 516 South Main street, Butte, on leased land, and that the other property was contained in the warehouse at the time of the seizure. It further discloses that on June 26, 1905, upon a sale of the property by the Shackleton & Whiteway Construction Company to Farnham, Wright & Hale, the predecessors of this plaintiff, the construction company delivered up to Farnham the key to the warehouse, and thereafter did not exercise any ownership or control over any of the property. While this evidence is meager, it is held to be sufficient by the authorities generally. In *Dodge* v. *Jones,* 7 Mont. 121, 14 Pac. 707, this court said: "No particular act or formal ceremony is necessary to make a delivery in law. Any act done, coupled with the intent to change the ownership, which has the effect to transfer the dominion over the thing sold to the buyer, is a delivery." In that case it was held sufficient delivery and evidence of change of possession that the horses in question were gathered, a distinguishing brand placed upon them, and they then returned to their customary range. The subject was again considered at length by this court, and the doctrine of the *Dodge Case* approved, in *Webster* v. *Sherman,* 33 Mont. 448, 84 Pac. 878. It has been repeatedly said by the courts that the acts which will amount to a delivery will vary with the different cases, and will depend upon the character and quantity of the property sold. (*Lay* v. *Neville,* 25 Cal.

546.)   It is easy enough to understand the meaning of the words "immediate delivery" as used in section 6128, Revised Codes, when applied to the sale, over the counter, of small articles of merchandise; but when one attempts to apply the same meaning to a sale of a kiln of hot bricks, or hay in the swath, stack, or mow, or a large quantity of ore in bins, he appreciates fully the difficulty in the way of establishing a hard-and-fast rule applicable to all cases.   It is not now an open question that there may be such a constructive delivery as will fully satisfy the requirements of the statute; for the law does not demand impossibilities.   In *Sharp* v. *Carroll*, 66 Wis. 62, 27 N. W. 832, it was held that the delivery by the vendor to the vendee of the key to the granary was a sufficient delivery of the wheat therein, which had been sold.   The same thing is held in *Kellogg Newspaper Co.* v. *Peterson*, 162 Ill. 158, 53 Am. St. Rep. 300, 44 N. E. 411, with reference to a sale of heavy machinery in a room.   In *Pope* v. *Cheney*, 68 Iowa, 563, 27 N. W. 754, it was held sufficient that the purchaser of corn in a crib, immediately after the purchase, nailed up the openings in the crib. The same ruling is made in *Vining* v. *Gilbreth*, 39 Me. 496; *Morrison* v. *Oium*, 3 N. D. 76, 54 N. W. 288.   (See, also, *Ott* v. *Sutcliffe* (N. J. Ch.), 60 Atl. 965; *Rapple* v. *Hughes*, 10 Idaho, 338, 77 Pac. 722.)

3. It is further contended by the defendants that at least a portion of the property seized was liable to the satisfaction of Parr's claim against the Shackleton & Whiteway Construction Company, for the reason that the delivery, if any, was not made contemporaneously with the sale by the construction company to Farnham, Wright & Hale.   The evidence discloses that a portion of the property in controversy was sold by the construction company to Farnham and others, on May 29, 1905, and that the purchasers did not take possession of it until June 26 following, when the remaining portion was sold.   Bearing in mind, then, that the attachment was not levied until July 8, these facts present in concrete form the question raised by instruction 6a, given by the trial court.   The question may be stated as fol-

lows: If a *bona fide* sale of goods and chattels is not accompanied by an immediate delivery, is the sale void as to an attaching creditor of the vendor, if the vendee, before the institution of the attachment suit, takes and retains actual possession of the property? So far as our investigation discloses, California and Colorado are the only states in which this question is answered in the affirmative. (*Watson* v. *Rodgers,* 53 Cal. 401; *Edwards* v. *Bank,* 59 Cal. 148; *Autrey* v. *Bowen,* 7 Colo. App. 408, 43 Pac. 908.) There is not any reason advanced in any of these cases for the conclusion reached. Counsel for defendants also cite *Stewart* v. *Hoffman,* 31 Mont. 184, 77 Pac. 689, as indicating the same view; but an examination of the opinion of this court on rehearing (31 Mont. 190, 81 Pac. 3) will disclose that the question was not before the court at all.

Prior to 1888 the court of appeals of Missouri held as do the courts of California and Colorado. (*Cabanne* v. *Bay,* 10 Mo. App. 594; *Franklin* v. *Gumersell,* 11 Mo. App. 306.) But in *McIntosh* v. *Smiley,* 32 Mo. App. 125, the precise question which we now have before us came before the same court. Section 2505, Revised Statutes of Missouri, is substantially the same as our section 6128 above. Our statute requires an immediate delivery; the Missouri statute requires a delivery within à reasonable time. In other respects the statutes are the same. In the *McIntosh Case,* however, the court found or assumed that the delivery was not made within a reasonable time after the sale, but was made before the attachment was levied; so that the question presented there was the same as the one which we are called upon to decide. The Missouri court makes a careful analysis of the statute, and points out the object to be obtained, as well as some of the objects to be avoided, by its enactment. It refers to the familiar rule that, as between the parties to the sale, the transaction would be equally valid whether there was or was not a delivery. It propounds the question for solution as we have stated it, and, among other things, says: "Under this statute we think that actual possession taken and retained by the vendee of the things sold completes his title against all persons except those whose rights may have intervened between the

sale and the taking of possession. \* \* \* The vendor having made a sale, another sale is not needed (in fact he has nothing to sell); and he may complete the sale by a delivery of the things sold, to take effect against others from the time that the delivery is made. In such a case the sale runs, as between the vendor and the vendee, from the time of the sale, but, as against creditors of and purchasers in good faith from the vendor, from the time of delivery. This, we think, is the clear meaning of the statute. To hold otherwise would be to prevent a sale, un-accompanied by a delivery within a reasonable time from ever becoming perfected as against creditors and subsequent pur-chasers in good faith. To do this would be to perpetrate wrong, to prevent which was the object of the statute. The want of a delivery places the vendee, as to creditors and subsequent pur-chasers in good faith, in the same position he would have been in if he had not purchased the property, but in no worse posi-tion. While the possession remains in the vendor, after the lapse of a reasonable time for a delivery, as to such creditors and purchasers there is no sale, but the vendee is not disqualified from becoming the purchaser of the property; and taking actual possession and retaining it makes him a purchaser even against such parties if at the time of the taking of possession they have no existing rights. An attaching creditor, as such, has no rights in the debtor's property until after levy under the writ of at-tachment. Therefore the question in this case must be answered in the negative.'' Because the court of appeals of Missouri is not a court of last resort, and because of the importance of the question decided, the case was certified to the supreme court, where it is said: ''This case is certified here from the Kansas City court of appeals as being in conflict with previous decisions rendered by the St. Louis court of appeals. It is reported in 32 Mo. App. 125. The conclusion reached by the Kansas City court of appeals in this case that a *bona fide* sale of goods and chattels, the possession of which is not taken within a reason-able time after the sale, within the meaning of section 2505, Revised Statutes of 1879, is not void, as to an existing creditor at the time of the sale, if before the institution of an attach-

ment suit by such creditor the vendee takes and retains actual, continuous possession of the property, and remains in possession thereof at the time of the levy of the writ in such suit upon such property, meets with our approval. The precise question under that section of the statute has not hitherto been passed upon by this court, but the decision of the court of appeals finds support in the rulings of this court in the following cases: *Dobyns* v. *Meyer,* 95 Mo. 132 [6 Am. St. Rep. 32, 8 S. W. 251]; *Petring* v. *Chrisler,* 90 Mo. 650 [3 S. W. 405]. The judgment of the Kansas City court of appeals is affirmed.'' (*McIntosh* v. *Smiley,* 107 Mo. 377, 17 S. W. 979.)

In *Clute* v. *Steele,* 6 Nev. 335, this same question came before the supreme court of Nevada, under a statute substantially the same as our own. After speaking of the presumptions arising from nondelivery, as deduced by the courts and text-writers, the court says: ''While, however, decisions have been thus various, there has been a uniformity of holding upon the necessary status of those who might question such a sale; and the conclusion is that no creditor at large may do so, and that a delivery before the attachment of any lien of a creditor will satisfy the law and validate the sale.'' And the following is quoted, with approval, from Hilliard on Sales: ''And the general rule may be laid down that where a vendee takes possession at a time subsequent to the sale, but before the rights of creditors accrue by attachment or otherwise, he shall hold against creditors.'' (Page 183.)

Section 2663, Statutes of Oklahoma, 1893, is identical in terms with our section 6128 above, and in *Woods* v. *Faurot,* 14 Okl. 171, 77 Pac. 346, the court held that under the statute above, if delivery was not made until some months after the sale, but was made before the attachment was levied, the sale was valid as against the attaching creditor. In Tiedeman on Sales, page 115, it is said: ''Mere delay in the delivery of the possession is ordinarily not considered fraudulent as to creditors, as long as delivery is actually made before attachment.'' In 14 American and English Encyclopedia of Law, second edition, 382, it is said: ''As a general rule, it is considered to be sufficient that the

purchaser take possession of the property before any creditors
of the vendor have obtained specific rights to, or liens upon, the
property sold, as by the levy of attachments or executions or
otherwise.'' The following authorities, in addition to those men-
tioned, fully support the rule thus announced: *Gilbert* v. *Decker,*
53 Conn. 401, 4 Atl. 685; *Cruikshank* v. *Cogswell,* 26 Ill. 366;
*Blake* v. *Graves,* 18 Iowa, 312; *Bartlett* v. *Williams,* 1 Pick.
(Mass.) 288; *Waite* v. *Mathews,* 50 Mich. 392, 15 N. W. 524;
*Weeks* v. *Fowler,* 71 N. H. 518, 53 Atl. 543; *Levin* v. *Russell,*
42 N. Y. 251; *Wilson* v. *Leslie,* 20 Ohio, 161; *Rule* v. *Bolles,*
27 Or. 368, 41 Pac. 691; *Smith* v. *Stern,* 17 Pa. 360; *Coty* v.
*Barnes,* 20 Vt. 78; *Sydnor* v. *Gee,* 4 Leigh (Va.), 535. (See,
also, *Sayward* v. *Nunan,* 6 Wash. 87, 32 Pac. 1022; *Poling* v.
*Flanagan,* 41 W. Va. 191, 23 S. E. 685.)

As between the parties to a sale of personal property, it is
wholly immaterial whether there is any delivery of the thing
sold. It is equally true that a mere creditor, as such, does not
have any interest whatever in his debtor's property. If the
Shackleton & Whiteway Construction Company had in good
faith sold all this property to Farnham and others on June 26,
and had accompanied the sale by an immediate delivery, Parr
could not complain, even though such sale might operate to de-
feat him in the collection of his debt. On the contrary, if Parr
had commenced his action and procured a writ of attachment
to be issued and levied upon the property while still in the
possession of the construction company, Farnham and others
could not complain even though they had parted with value
which would be lost to them. Manifestly the purpose of the
statute is not to hinder the transfer of personal property, but
to prevent such property of debtors being fraudulently put be-
yond the reach of creditors by secret transfers. When, however,
the delivery has been made before a creditor has moved to collect
his debt, he is not placed at any greater disadvantage than he
would have been had delivery accompanied the sale. Even if
Parr had extended credit to the construction company upon the
strength of its ownership of the property in controversy—
which he did not do—he could not assert a right to have the

particular property subjected to the payment of his debt, unless by mortgage or some other lien he had burdened it with his claim; for at any time after extending such credit, and before he fixed a lien upon it, the construction company, by a *bona fide* sale accompanied by immediate delivery, could have put the property beyond the reach of Parr. It would seem that the legislature did not intend to go further than to declare that, during the time the vendor of personal property remains in possession after sale, his creditors may seize the property in satisfaction of their claims, notwithstanding such sale. This view accords with the overwhelming weight of authority. Instruction 6*a*, as given by the court, did not correctly state the law.

4. There is not any substantial evidence in this record of actual fraud in the transaction between the construction company and Farnham and others, and therefore instruction 7*a* should not have been given. We are not able to find any evidence to justify the giving of instructions 8*a* and 9*a*.

For the errors in giving these instructions, the district court properly granted a new trial, and the order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being disqualified, did not hear the argument, and takes no part in the foregoing decision.