## WELLS and another *v.* LANGBEIN and others.

### (*Circuit Court, N. D. Iowa, E. D.*   April 29, 1884.)

1. **FRAUDULENT CONVEYANCE—CHATTEL MORTGAGE—RESERVATIONS IN FAVOR OF MORTGAGOR.**

   A chattel mortgage reserving to the mortgagor the right to dispose of the goods in the usual course of trade, provided the stock be kept up, is void with respect to the creditors of the mortgagor.

2. **SAME—NOT CURED BY POSSESSION AFTERWARDS TAKEN.**

   Possession taken by the mortgagee under a chattel mortgage, originally void as in fraud of creditors, before its validity is attacked by them, is affected with the original fraud, and gives the mortgagee no rights against the mortgagor's creditors, who can at once attach the property.

At Law.

*Henderson, Hurd & Daniels,* for plaintiffs.

*C. P. Brown* and *Robinson, Powers & Lacy,* for garnishees.

SHIRAS, J. The defendants, C. H. Langbein & Bro., were engaged in the mercantile business at Ossian, Iowa, and on the twenty-eighth day of September, 1883, they executed a chattel mortgage on their entire stock of merchandise, together with their store fixtures and books of account, and all the additions to be made to the stock, to secure payment of a promissory note of $916.70, due one Louisa Wight, payable September 28, 1884. And on the same day they executed a

second mortgage on the same property to one Ferdinand Langbein, to secure a promissory note of $575, payable January 2, 1885. On the ninth of October, 1883, they executed a third mortgage on the same property to Davis & Madary to secure a note of $248.19, payable October 9, 1884. Each of these mortgages contains the provision that the "grantors have the right to dispose of the goods in the usual course of trade, provided they keep up the stock."

Between the twenty-sixth of July and twenty-eighth of September, 1883, the plaintiffs sold on credit to C. H. Langbein & Bro. goods to the amount of $518.34, and on the fifteenth of October, 1883, this suit was brought to recover therefor, a writ of attachment being issued, which was served by garnishing M. J. Carter, Louisa Wight, F. Langbein, Davis & Co., and others, service being made October 16, 1883. By agreement, the answer given by M. J. Carter stands as the answer of all the garnishees, and from it it appears that on the tenth of October, 1883, M. J. Carter, as attorney and agent for the several mortgagees named, took possession of the mortgaged property, and has since converted the same into cash, and holds the money thus realized in his possession, claiming that it should be applied in payment of the mortgages above described.

The plaintiffs claim that the mortgages are void as against creditors, and the question for determination is as to the validity of the mortgages as against the attaching creditors. As the mortgages in express terms provide that the mortgagors should remain in possession, with the right to sell the mortgaged property in the usual course of trade, they come within the rule laid down in *Robinson* v. *Elliott*, 22 Wall. 513, and *Crooks* v. *Stuart*, 2 McCrary 13, S. C. 7 FED. REP. 801, wherein it is declared that the reservation of such rights to the mortgagor, upon the face of a mortgage, shows conclusively that it is intended as a shield and protection to the mortgagor, and operates as a fraud upon the rights of the creditors of the mortgagor, and is therefore void.

On behalf of the mortgagees it is claimed that, granting the correctness of the rule recognized in the cases-cited, it is not applicable to the present case, for the reason that the mortgagees, through their agent, had taken possession of the property before the writ of attachment in favor of plaintiffs was served by garnishment of the mortgagees and their agent. As already stated, the answer of the garnishee shows that he received possession of the property under the mortgages as agent of the mortgagees. The facts do not present a case wherein all rights under the mortgages were abandoned, and the parties entered into a new and wholly independent arrangement, whereby the goods were placed in the hands of the garnishee as a pledge for the payment of the debts due the parties named as mortgagees. The possession of the goods was delivered to the mortgagees for the purpose of fulfilling the conditions of the mortgages, and the possession was held under the terms thereof, and not by virtue of any new con-

tract. The point to be decided, therefore, is whether the taking possession of the mortgaged property by the mortgagee in pursuance of the terms of the mortgage, before any creditor attacks the validity of the conveyance, will validate a mortgage which contains provisions showing that it is a fraud upon the rights of creditors. Counsel for the mortgagees cite in favor of the affirmative of the proposition the cases of *Congreve* v. *Evetts*, 10 Exch. 298; *Read* v. *Wilson*, 22 Ill. 379; *Brown* v. *Webb*, 20 Ohio, 389.

In *Congreve* v. *Evetts* the question was as to the effect of a bill of sale of future crops. It was held that the execution of the bill of sale did not create any lien, legal or equitable, upon the future crops, but that if, after the crops were growing, actual possession thereof was delivered to the creditor, he could hold the same against an execution creditor. The point decided was that an executory contract, which may be ineffectual at its date to create a lien upon property not then in existence, may be rendered binding and complete by delivery of possession after the property has been created or acquired.

In *Read* v. *Wilson* the decision is based upon the construction of a statute then in force in Illinois, by which it was provided that by the insertion of certain clauses in the mortgage the mortgagor might be authorized to remain in possession for two years. The court held that the provisions of the mortgage did not comply with the requirements of the statute, and did not therefore authorize the mortgagor to remain in possession, but that as the mortgagee took possession of the property before any other creditor obtained a lien thereon, such possession would cure the fraud, if any, imputed by reason of the fact that the mortgagor had continued in possession for a time contrary to the terms of the statute.

In *Brown* v. *Webb* it appeared that one Garnier, being insolvent, made a transfer of property to one Bour, which transfer was in fraud of his creditors. Brown & Co., creditors of Garnier, with knowledge of the fraud in the transfer from Garnier to Bour, procured, with Garnier's consent, a chattel mortgage from Bour upon the property transferred to him, to secure the debt due them from Garnier. The court held that the transfer from Garnier to Bour, though void as against creditors, was good as between them, and conveyed the legal title to Bour, and that Webb & Co. were justified in getting security for the debt due them from Garnier, by taking the mortgage from Bour, as thereby they got security on Garnier's property, the title of which was in Bour.

Of these cases, therefore, the only one that has any bearing upon the question at issue is that of *Read* v. *Wilson*, and in that case the court was ruling solely upon the fact that the mortgagee had not promptly taken possession under a mortgage which, by its terms, required him to take possession.

In *Robinson* v. *Elliott* and *Crooks* v. *Stuart*, *supra*, it appears from the statement of facts in each case that possession under the mort-

gage had been taken before the attaching creditors had obtained any lien upon the property, yet it was not held that this fact in any way affected the conclusion announced.

The supreme court of California, in *Chenery* v. *Palmer*, 6 Cal. 123; the supreme court of New York, in *Delaware* v. *Ensign*, 21 Barb. 85; and *Dutcher* v. *Swartwood*, 15 Hun, 31; the court of appeals of New York, in *Parshall* v. *Eggert*, 54 N. Y. 18; the supreme court of Wisconsin, in *Blakeslee* v. *Rossman*, 43 Wis. 116; and the supreme court of Minnesota, in *Stein* v. *Munch*, 24 Minn. 390,—all hold that where the mortgage is void for fraud as to creditors, taking possession thereunder, before a lien is obtained on the property in favor of a creditor, will not render it valid. The fraud existing in the mortgage itself vitiates all steps taken under it.

Without citing further authorities upon the proposition, it seems to me clear that the cases last named announce the true rule. If the mortgage under which possession is taken is fraudulent and void as to creditors, then the effort to enforce it by taking possession under it cannot purge it of the existing fraud, nor render valid as against creditors that which the law, on grounds of public policy, declares to be fraudulent and therefore void. When a chattel mortgage, bill of sale, or other like instrument is imperfect through insufficient description, or because the property is not then in existence, or because the mortgagee did not promptly take possession, or record the mortgage, or for any reason not bottomed on fraud, then taking possession may render complete and valid that which was before incomplete; but when the invalidity of the conveyance is caused by the fact that it is a fraud upon the rights of third parties, upon what principle can it be held that enforcing the fraudulent mortgage, by taking possession under it, shall have the effect of validating it? The title and rights of the mortgagee are based upon the mortgage. He enters into possession under and by virtue of the mortgage. If the mortgage is void as to creditors by reason of fraud, the title and possession based thereon must, if attacked by creditors, fall with the foundation on which they rest. Any other rule would in most cases enable the parties to the fraud to reap the benefits of their fraudulent practices, as in that case a debtor could give a chattel mortgage upon his property to a favored creditor or friend, remain in possession, continue to sell in the usual course of trade, use the proceeds for his own purposes, and still protect the mortgage from successful attack by being sufficiently on the alert to hand over possession to the mortgagee just before the injured creditors make a levy upon the property.

As the mortgages to Louisa Wight, F. Langbein, and Davis & Madary are void as to creditors by reason of the stipulations therein contained, the property passing into the possession of the mortgagees was the property of C. H. Langbein & Bro., for the value of which the garnishees must respond, to the plaintiffs, so far as the same may be needed to pay the judgment in favor of plaintiffs.