CLARENCE L. CHAFFEE v. ATLAS LUMBER COMPANY.

FILED JANUARY 3, 1895. No. 5558.

1. **Fraudulent Conveyances:** CONSIDERATION. It is firmly established in this state that a pre-existing debt is a sufficient consideration for a chattel mortgage, and protects the mortgagee to the same extent as had there been a new consideration.

2. ——: PREFERENCES. Another rule equally well settled by a long line of judicial decisions is that an insolvent debtor may in good faith pay or secure one creditor to the exclusion of others.

3. ——: CHATTEL MORTGAGES: POSSESSION. Although the possession of mortgaged chattels by the mortgagor raises the presumption that the mortgage was fraudulent, yet such presumption is not conclusive, but may be overthrown by evidence showing that the instrument was given in good faith.

4. ——: ——. THE PRESUMPTION OF FRAUD arising from the possession of mortgaged chattels by the mortgagor remains only so long as he retains possession. There is no such presumption after the mortgagee obtains possession of the property.

5. ——. CERTAIN INSTRUCTIONS given and refused not reviewed, because of the insufficiency of the assignments relating thereto in the petition in error.

6. Chattel Mortgages: FORECLOSURE. Mortgaged chattels should be disposed of according to the stipulation of the mortgage and the provisions of the statute relating to the foreclosure of chattel mortgages. If the mortgagee does not do so, that, of itself, will not invalidate the lien of the mortgage. If he fails to sell the property, or if he disposes of the same in a mode contrary to the stipulation of the parties, or the requirements of the statute, the mortgagee must account for its value.

ERROR from the district court of Furnas county. Tried below before COCHRAN, J.

*Martin Langdon, McClure & Anderson,* and *I. Dunn,* for plaintiff in error, cited: *Savage v. Hazard,* 11 Neb., 327; *Temple v. Smith,* 13 Neb., 514; *Dorrington v. Minnick,* 15 Neb., 404; *Lane v. Starkey,* 15 Neb., 289; *Tallon v. Ellison,* 3 Neb., 75; *Brunswick v. McClay,* 7 Neb., 137; *Jones v. Hetherington,* 45 Ia., 681; Herman, Chattel Mortgages, 229–236; *Anderson v. Patterson,* 25 N. W. Rep. [Wis.], 541; *Bullis v. Drake,* 20 Neb., 171; *White v. Woodruff,* 25 Neb., 805; *Rector-Wilhelmy Co. v. Nissen,* 35 Neb., 716.

*W. S. Morlan, contra,* cited: *Ahlman v. Meyer,* 19 Neb.,

19

65; *Fitzgerald v. Andrews,* 15 Neb., 52; *Kay v. Noll,* 20 Neb., 389; *Taylor v. Ryan,* 15 Neb., 578; *Cameron v. Marvin,* 26 Kan., 612; *Frankhouser v. Ellett,* 22 Kan., 127; *Jones v. Huggeford,* 3 Met. [Mass.], 515; *Briggs v. Parkman,* 2 Met. [Mass.], 258; *Kleine v. Katzenberger,* 20 O. St., 117; *Miller v. Lockwood,* 32 N. Y., 293; *Ford v. Williams,* 24. N. Y., 359; 1 Parsons, Contracts, 571; *Turner v. Killian,* 12 Neb., 580; *Rowley v. Rice,* 10 Met. [Mass.], 7; 3 Am. & Eng. Ency. Law, 181; *Robinson v. Williams,* 22 N. Y., 382; Jones, Chattel Mortgages, sec. 79; *Byram v. Gordon,* 11 Mich., 531; *Kaysing v. Hughes,* 64 Ill., 123; *Stoughton v. Pasco,* 5 Conn., 442; *Bumpas v. Dotson,* 7 Humph. [Tenn.], 310; *New v. Sailors,* 114 Ind., 407; Jones, Chattel Mortgages, sec. 644; *Gregory v. Thomas,* 20 Wend. [N. Y.], 17; *Hill v. Beebe,* 13 N. Y., 556; *Lyon v. Ballentine,* 63 Mich., 97, 6 Am. St. Rep., 284.

NORVAL, C. J.

This action was brought by the Atlas Lumber Company, a corporation, against one S. S. Hewitt, to recover possession of a stock of lumber and building material situated in the town of Beaver City. The plaintiff claimed the property under a chattel mortgage executed by one William M. Ingalls, and by him delivered to the plaintiff. Hewitt, as sheriff of Furnas county, held the property under a writ of attachment issued out of the district court of said county in a suit wherein the Howell Lumber Company was plaintiff and said Ingalls was defendant. C. L. Chaffee, being the successor of the Howell Lumber Company, and the owner of all the property and accounts belonging to said company, was, on his own motion, substituted by the court as defendant in place of the sheriff. Upon the trial the jury returned a verdict in favor of the plaintiff, and assessing his damages in the premises at one cent. The defendant filed a motion for a new trial, which was overruled, and judg-

ment was thereupon entered by the court upon the said verdict of the jury.

The first contention made by counsel in the brief of plaintiff in error is that the verdict is contrary to, and is not supported by, sufficient evidence.   It appears from the evidence in the record that the defendant in error on, and for a long time prior to, April 30, 1890, was engaged in the lumber business at Beaver City, this state, the enterprise being conducted by one William M. Ingalls, its manager.   On the date aforesaid the Atlas Lumber Company sold and disposed of the business and stock on hand to said Ingalls for the sum of $2,700, Ingalls paying $1,300 of the consideration in cash, and the balance, amounting to $1,400, was divided into four equal payments of $350 each, for which Ingalls gave his notes, but the same were unsecured.   Two of these notes having matured, and the same not having been paid, one Burt Coldren, a representative of the defendant in error, about the last of July, or the first of August, 1890, went to Beaver City, interviewed Mr. Ingalls, and requested that he take up the old notes and give new ones in their place and secure the same by a chattel mortgage on his stock.   Mr. Ingalls objected and refused at that time to give security, on the ground that it would injure his credit.   About the 6th day of August, 1890, Mr. Coldren called again upon Mr. Ingalls and renewed his demand for security, and as an inducement for the latter to secure the claim, Coldren proposed to reduce the rate of interest from ten per cent to eight per cent, and to extend the time of payment one year on other indebtedness of Ingalls to the company.   This proposition was finally accepted by Ingalls, and he on said date gave four new notes, amounting to $1,437.33, payable as follows:  One for $437.33, due October 1; $300, due January 1, 1891; $300, due April 1, 1891; and $400, due on July 1, 1891. Mr. Ingalls at the same time secured the payment of these notes by a chattel mortgage covering his stock of lumber,

including the property in controversy herein. This mortgage was duly filed in the office of the county clerk of Furnas county on the next day after it was executed. At the same time, as further security for said indebtedness, Ingalls assigned to defendant in error a mechanic's lien upon a church building for $372 and transferred accounts due him amounting to something less than $500, which accounts were deposited for collection in a bank at Beaver City. After the giving of the mortgage Ingalls remained in possession of the stock and sold the same in the usual course of business. About the first day of May, 1890, Ingalls purchased, on sixty days' time, of the Howell Lumber Company, lumber and building material amounting to the sum of $1,664, no part of which has been paid. For some cause or other Ingalls did not succeed in his business venture, and on or about the 20th day of September, 1890, he left Beaver City for Salt Lake City, with the purpose of not returning. He met Mr. Howard, the president of the defendant in error, at Denver, and on September 23d, at the request of Howard, and as a further or additional security for his indebtedness, he executed a bill of sale to the Atlas Lumber Company of his entire stock of lumber and building material, which was recorded on the 27th day of said month in Furnas county. On the 13th day of October, 1890, the Howell Lumber Company attached the stock on hand, which was covered by said chattel mortgage and bill of sale, and the sheriff held the same until replevied in this suit.

It is insisted that the chattel mortgage was given by Ingalls, and received by the defendant in error, for the purpose of defrauding the Howell Lumber Company. This contention is not well founded. The uncontradicted testimony shows that the mortgage was given for the sole purpose of paying a *bona fide*, pre-existing debt, a portion thereof being then past due. This was a sufficient consideration, and protects the defendant in error to the same

extent as though there had been a new consideration given when the mortgage was executed. (*Turner v. Killian*, 12 Neb., 580; *Henry v. Vliet*, 36 Neb., 138.) It is true that the officers of the Atlas Lumber Company were aware, when the mortgage in question was taken, of the indebtedness of Ingalls to the Howell Lumber Company, and that Ingalls was being pressed by the latter for the payment thereof, but this did not invalidate the mortgage. It is no longer a mooted question in this state that a debtor, in failing circumstances, as was Ingalls when the mortgage was executed, may lawfully pay, or secure, one creditor to the exclusion of others. (*Lininger v. Raymond*, 12 Neb., 19; *Deitrich v. Hutchinson*, 20 Neb., 52; *Rothell v. Grimes*, 22 Neb., 526; *Ward v. Parlin*, 30 Neb., 376.) Instead of there being an intention to defraud, either on the part of the mortgagor or mortgagee, the contrary conclusively appears from the record. It was only after much persuasion that Ingalls was induced to give the security. But it is contended that the fact the mortgagor remained in possession and sold lumber and converted the moneys derived therefrom to his own use shows the transaction to be fraudulent, and that the mortgage was a mere device to assist Ingalls to prevent his other creditors from collecting or securing their claims. While the possession of mortgaged chattels by the mortgagor raises the presumption that the mortgage was fraudulent, yet it is not conclusive, but may be overcome by evidence showing that the same was made in good faith. (*Robison v. Uhl*, 6 Neb., 328; *Miller v. Morgan*, 11 Neb., 121; *Turner v. Killian*, 12 Neb., 580; *Davis v. Scott*, 22 Neb., 157.) In the case at bar there is no question, from the evidence adduced, that the mortgage and the bill of sale were made in the utmost good faith and without any intent to defraud the creditors of Ingalls. Again, the presumption of fraud raised by the statute from the possession of mortgaged chattels by the mortgagor remains only so long as the

mortgagor retains such possession. In this case there is ample testimony to establish, and which would have justified the jury in drawing the conclusion, that at and some time prior to the levying of the attachment the defendant in error was in possession of the stock of lumber, holding the same under the chattel mortgage and bill of sale, already alluded to as security for a *bona fide* debt. We have no hesitancy in saying that the verdict and judgment are supported by sufficient evidence. (*Sherwin v. Gaghagen*, 39 Neb., 238.)

The next assignment in the petition in error is in the following language: "The court erred in giving the following instructions upon its own motion, to-wit: Nos. 2, 3, 4, 5, 6, 7, 8, and the following part of the eighth instruction: 'But a mortgage to a creditor taking a mortgage, or buying a stock of goods for the purpose of securing a *bona fide* claim of such mortgagee, is not fraudulent, even if such mortgagee knows that by such mortgage, or sale, other creditors are defrauded;' 9, 10, 11, 12, 13, 14, 15, 16, and 17." The foregoing assignment is insufficient, and must be overruled, under the repeated holdings of this court, unless it can be sustained as to all the instructions therein mentioned. Plaintiff in error, in the brief filed, claims a reversal alone for the giving of seven out of the sixteen instructions complained of in the assignment, thereby, in effect, conceding that the remaining nine instructions, to which no criticism is offered, are not erroneous. Several paragraphs of the charge of the court covered by the assignment, if not all of them, not only lay down correct legal propositions, but are applicable to the issues made by the pleadings and evidence, among which are the eleventh, thirteenth, and seventeenth, which read as follows:

"11. The law presumes transactions are honest, and made for an honest purpose, until the contrary is shown; and the burden of the proof to show a dishonest purpose in this case is upon the defendant.

"13. The jury are instructed that a person who is indebted, and unable to pay all of his debts in full, has a right to prefer any one or more of his creditors to the exclusion of all others; and in payment of a *bona fide* indebtedness to one of his creditors, a debtor may exhaust the whole of his property, so as to leave nothing for the other creditors who are equally meritorious.

"17. A pre-existing debt already due is a good consideration for a chattel mortgage, or bill of sale, to secure the payment of the same, and protects the party taking such security to the same extent as would a new consideration given at the time of the making of the mortgage, or bill of sale."

The last two instructions just quoted are in line with the decisions of this court, already cited in this opinion, and the eleventh instruction states an elementary principle of law. This assignment is, therefore, overruled without considering any of the other instructions embraced in such assignment.

At this time we will dispose of another assignment, namely, "the court erred in refusing the following instructions asked by the defendant: Nos. 4, 5, 6, 7, 8, 9, 10, 11, 12, and 14." It is not deemed necessary to set out these requests to charge in this opinion. Suffice it to say, that the propositions of law enunciated in the fourth and fifth requests were fully stated in the instructions given by the court, and it was not error to refuse to charge the jury again upon the same points. The fourth and fifth requests having been properly refused, this assignment, for the reasons stated in our discussion of the preceding assignment, will be dismissed without further consideration.

Complaint is finally made because the court, at the request of the plaintiff below, gave this instruction:

"1. The jury are instructed that to entitle the plaintiff to recover in this case it is only necessary that he should prove by a preponderance of the evidence that he had a

valid lien on the property replevied to secure an honest, *bona fide* debt, and was entitled to possession by virtue of such lien at the time of the commencement of this action, and it was wrongfully detained by the defendant. So far as this action is concerned, it is immaterial whether the plaintiff, after taking possession of said property, sold the same under one or another of his claimed liens, whether he sold at private or public sale, or what disposition he made of the property."

The criticism made is upon the last clause of the above instruction. It is contended that it does not correctly state the law, but on the contrary that it is material what the plaintiff below did with the property after taking possession thereof. The evidence discloses, after the Atlas Lumber Company acquired possession of the stock under its mortgage and bill of sale, that it sold the property in the usual course of business for the purpose of paying its claim. This method of sale did not conflict with any of the terms of the bill of sale, although the same was not in compliance with the requirements of the chattel mortgage, or the statute relating to the foreclosure of such instruments. Since the mortgagee was claiming under the bill of sale, as well as the mortgage, it could make no difference, so far as the validity of his lien was concerned, that the property was sold at private, instead of public, sale. While a mortgagee of chattels must dispose of the property according to the stipulation of the mortgage and the provisions of the statute governing the foreclosure of chattel mortgages, yet it is not the law if he fails so to do in any essential particular, or if he omits to sell the property after taking possession of the same, that the mortgage is thereby invalidated and the lien lost, but in either case when other creditors have a junior claim upon the property, the mortgagee must account for its value. (*Lininger v. Herron*, 23 Neb., 197; *Loeb v. Milner*, 21 Neb., 392.) It matters not, so far as the mortgagor or his other creditors are con-

cerned, whether the property was sold at private or public sale, or what the mortgagee did with the property after the same came into its possession.  The instruction, therefore, was not erroneous.  The judgment is

AFFIRMED.