STEWART, APPELLANT, v. HOFFMAN, RESPONDENT.

(No. 1,852.)

(Submitted March 29, 1904. Decided July 15, 1904.)

*Bankruptcy — Preference — Chattel Mortgage — Validity — Statute.*

1. Under Civil Code, Section 4491, a mortgage of personalty and transfer thereunder are void against a trustee in bankruptcy where the mortgage was made more than fourteen months prior to the transfer.

2.  In an action by a trustee in bankruptcy to recover property of the bankrupt alleged to have been fraudulently transferred to defendant, where it appeared that the transfer was made within four months of the time the debtor was adjudged to be a bankrupt, and under a chattel mortgage having no validity under the laws of the state where the transfer was made, the trustee was entitled to judgment under Bankruptcy Act July 1, 1898, c. 541, Section 60, cl. "a," 30 Stat. 562 : it appearing that the transfer was not to secure a present loan or advance, but one to pledge the payment of an old obligation, the effect of which was to enable the defendant to obtain a greater proportion of his debt than any other creditor of the bankrupt.

*Appeal from District Court, Gallatin County; Wm. L. Holloway, Judge.*

ACTION by W. R. C. Stewart, trustee in bankruptcy of Frank Rennie, against C. W. Hoffman. From a judgment for defendant, plaintiff appeals. Reversed.

*Mr. John A. Luce,* and *Mr. M. S. Gunn,* for Appellant.

*Mr. Eugene B. Hoffman,* for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the court.

This is an appeal from a judgment entered in favor of the defendant. The plaintiff, at the time of the bringing of the action, was the duly appointed, qualified and acting trustee of the estate of one Frank Rennie, a bankrupt. Rennie, prior to August 11, 1899, and continuously from that date until the 14th day of March, 1901, was engaged in the business of a liquor dealer in the county of Gallatin. On that day he made, executed and delivered to the Bozeman National Bank his promissory note for $1,800, on which he made certain payments, leaving a balance of about $800. On February 6, 1901, he, being unable to pay his debts to numerous creditors, made a chattel mortgage of his saloon property, including a large number of articles, running to the defendant, C. W. Hoffman, to secure him, he having guarantied in writing the payment of said note to the bank. This mortgage was duly executed, and filed in the office of the county clerk. But on the 11th day of August, 1899, a

certain agreement in writing was made between Rennie and Hoffman, whereby it was attempted to secure the latter for such sum or sums of money as he might advance to pay the debts of Rennie. Rennie gave therein to Hoffman the right at any time prior to the full payment of the sums of money mentioned, or any other money advanced by Hoffman for him (Rennie), to take immediate possession without notice and without legal proceedings of all of said personal property, and sell and dispose of the same at such time or times and in such manner as to him might seem advisable, the proceeds of the sale first to be applied to payment of Hoffman for all moneys advanced to Rennie and for costs and expenses of taking, keeping and selling the property, the residue to be paid to Rennie.

It is noticeable that the defendant in his answer sets up that this agreement, which was made without formality, and was not filed in the office of the county clerk, was a chattel mortgage to secure him against loss or liability by reason of the written guaranty, whereas the writing itself discloses the fact, as above stated, that it was to secure him (Hoffman) for such sums of money as he might advance to pay the debts of Rennie. The defendant avers that this mortgage of the 6th of February was made "for the purpose and with the intent of extending said chattel mortgage of August 11, 1899, and the lien thereof, and putting the same in such form as to entitle it to record, so that notice of its existence might be given to all of the aforesaid creditors of said Frank Rennie."

On the 14th day of May, 1901, Rennie was, by order of the United States Court for the District of Montana, adjudged a bankrupt. It is alleged in the complaint that on the 14th day of March, 1901, Hoffman seized and took possession of all of said property of Rennie under and by virtue of the chattel mortgage—meaning the instrument of February 6, 1901. Defendant denied that the property was taken by him under or by virtue of the chattel mortgage last above mentioned, but avers that he took and seized the same on the 14th day of March, 1901, under

and by virtue of the authority conferred upon him in the instrument of August 11, 1899, for the purpose of securing himself against any loss by reason of his said personal guaranty, and not otherwise. It is admitted that there is still due by Rennie to the bank on the original agreement made with the bank a sum exceeding $800. Possession of the property remained in Rennie until the 14th day of March, 1901, when it was taken by Hoffman, as above stated, except one or two articles of small value.

Plaintiff prayed for a decree that the chattel mortgage of February 6, 1901, be declared null and void as against the creditors of Rennie and against the plaintiff, and that Hoffman be required to surrender and deliver up to plaintiff all the property by him seized, and that, if any of said property could not be delivered, plaintiff have judgment for the value thereof, and that plaintiff have attorney's fees.

The case was tried to the court without a jury, and the court found, among other things, that on February 6, 1901, Rennie having reduced his indebtedness on the note to the bank which Hoffman had guarantied to $800, with a small amount of interest, and being again pressed by creditors, gave to the defendant "another chattel mortgage," regular in form, for which no new consideration was passed, and that said instrument was intended as a continuation of the security given on August 11, 1899, and that Hoffman, on March 14, 1901, deeming himself insecure, took possession of the property under and by virtue of the instrument of August 11, 1899. The court found further that in April, 1901, proceedings were commenced against Rennie in the United States court, and that he was regularly adjudged a bankrupt, and plaintiff was appointed by the United States court as alleged; and that defendant turned over to plaintiff a portion of the goods in his possession, retaining sufficient to indemnify himself. As conclusions of law the court found, among other things, that the instrument of August 11, 1899, was a valid chattel mortgage as between the parties to it and as against all

persons except such as had brought themselves into privity with the property by acquiring a lien upon the specific property therein described; that defendant's taking possession of the property under his chattel mortgage of August 11, 1899, before any of Rennie's creditors had established a lien on the property, cured any defect which may have existed in the chattel mortgage; that the chattel mortgage of February 6, 1901, was a continuation of the security given defendant in the chattel mortgage of August 11, 1899; that the service of certain garnishment proceedings in suits by Rennie's creditors did not give them a lien on the property in controversy, and did not entitle them, or any of them, or the plaintiff, to contest the validity of the chattel mortgage of August 11, 1899; and that the plaintiff was not entitled to recover. Judgment was entered accordingly for the defendant. Plaintiff appeals.

Ten specifications of error are relied upon, but it is not necessary to consider more than one of them. Was the court correct in holding that the plaintiff was not entitled to recover a judgment? The property was seized by the defendant, according to his own statement, under and by virtue of the power contained in the instrument of August 11, 1899, it having remained in the possession of Rennie from the time of the making of the instrument until the time of its seizure. There was not any new consideration for the mortgage of February 6, 1901. Possession of the property was taken less than four months prior to the time that Rennie was declared a bankrupt under the bankruptcy act. At the time of the taking of said property it conclusively appears that Rennie was insolvent. The instrument of August 11th was not such as entitled it to filing under the laws of the state of Montana as a chattel mortgage. The insolvent, Rennie, owed considerable sums of money to other parties before the 14th day of March, 1901. There was not any fixed time mentioned in the "mortgage" of August 11, 1899. More than fourteen months had expired after August 11, 1899, before possession was taken under the instrument of that date, and the agreement was not executed and had not been executed up to the time

of the commencement of this action. The property of Rennie was turned over to the defendant less than four months before the bankruptcy. It was not a transfer to secure a present loan or advance, but one to pledge the payment of an old obligation, the effect of the transfer being to enable one creditor to obtain a greater percentage of his debt (to-wit, all of it) than any other. This is illegal, under Section 60 of the national Bankruptcy Act of 1898 (Bankr. Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), and the property may be recovered.

Section 60 of said Act is as follows: "(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. ·(b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.  *  *  *"

Section 4491 of the Civil Code of this state is as follows: "Sec. 4491. Every transfer of personal property, other than a thing in action, or a ship or cargo at sea, or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors,

and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers and incumbrancers in good faith subsequent to the transfer."

It thus appears that the instrument of August 11, 1899, and the transfer made on the 14th day of March, 1901, were not such as are allowed by the law of the state of Montana, and were such as attempted to give an unlawful preference to the defendant. Our conclusion, therefore, is that the judgment of the court below is wrong, and must be reversed.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in the foregoing decision.

Rehearing granted November 30, 1904.

ON REHEARING.

(Submitted March 13, 1905.  Decided May 29, 1905.)

1.  In an action by a trustee in bankruptcy to recover property of the bankrupt alleged to have been fraudulently transferred to the defendant, under a chattel mortgage executed more than fourteen months prior to such transfer and good between the parties to the instrument, where it appeared that the transfer was made within four months of the time when the debtor was adjudged a bankrupt, the trustee was not entitled to judgment under the provisions of the Bankruptcy Act of July 1, 1898 (Chapter 541, Sec. 60, cl. a, 30 Stat. 562), the delivery to, and taking by, defendant of the goods not having been unlawful under the laws of this state nor an unlawful preference under the Bankruptcy Act.
2.  A mortgage not executed in manner and form as prescribed by law, is good between the parties.
3.  There not being in this state any restriction placed by law upon the mortgaging of any species of personal property, all such mortgages are exempted from the operation of Section 4491 of the Civil Code, which provides that a transfer of certain personal property and every lien thereon, other than a mortgage "when allowed by law," is conclusively presumed to be fraudulent under certain circumstances, and the words "when allowed by law" are therefore superfluous.
4.  In all matters pertaining to a construction of the United States Bankruptcy Act, the holdings of the Supreme Court of the United States are conclusive.

MR. JUSTICE MILBURN delivered the opinion of the court.

This case is before us for decision after rehearing. We are convinced that we were in error in our conclusion as announced in the opinion rendered heretofore.

We held that the instrument of August 11, 1899, and the delivery and taking of the property made on the 14th day of March 1901, were not such as are allowed by the law of this state and were such as attempted to give an unlawful preference to the defendant. Rennie was adjudged a bankrupt on the 14th day of May, 1901. Section 4491 of the Civil Code, cited heretofore, was adopted from California, as was declared in *Yank* v. *Bordeaux,* 23 Mont. at page 210, the section being identical with Section 3440 of the Civil Code of California. In the latter state there were at the time of the enactment of their Civil Code, certain kinds of personal property which it was not lawful to mortgage. This fact was overlooked by the codifiers of the Laws of Montana. In this state all personal property may be mortgaged; therefore, the words "when allowed by law," as appearing in our Section 4491, are superfluous. Disregarding the phrase "when allowed by law," all mortgages of personal property are exempted from the operation of the section. A mortgage not executed in manner and form as prescribed by law is good between the parties, as has been frequently declared by our court.

One ground upon which we decided that the delivery of the property to Hoffman was, in effect, to enable him to obtain a preference over other creditors, was that the delivery to him was not to secure a present loan or advance, but one to pledge the payment of an old obligation. Whatever views we had as to this, we are controlled by the utterance of the Supreme Court of the United States in *Sawyer* v. *Turpin,* 91 U. S. 114, 23 Lawyers' Co-op., p. 235. In all matters pertaining to a construction of the United States Bankruptcy Act, the holdings of the Supreme Court of the United States are conclusive. Our attention has been called pointedly to this Federal case upon rehearing, and we find that it is almost identical as to its facts

with the case before us, and Mr. Justice Strong, who wrote the opinion, is so clear, full and convincing in his argument and presentation of the facts and points that, were it not for the length of the opinion, it would be quoted in full herein. In it, as here, the question presented on appeal was whether the mortgage given by the bankrupt was a fraudulent preference of creditors within the prohibition of the Bankruptcy Act, and therefore void as against the assignee of the bankrupt. A bill of sale, understood by the parties to be a mortgage, was originally given for the protection of a pre-existing debt, and a formally executed mortgage covering the same property for the same purpose was given within four months immediately preceding the filing of the petition in bankruptcy. In that case it was admitted that the bankrupt was insolvent when the mortgage was made, and that the creditor had then reason to believe that he was insolvent. The petition in bankruptcy was filed on the 22d of October, 1869. On the 15th of May next preceding, the bankrupt gave the bill of sale to Turpin as security for a debt of $27,839. The mortgage was dated July 31, 1869. The bill of sale was a conveyance absolute in its terms, having no condition or defeasance expressed, but was understood to be a security for the debt due. It was in substantial legal effect, though not in form, a mortgage. "Having been executed," as the court says, "more than four months before the petition in bankruptcy was filed, there is nothing in the case to show that it was invalid." It was not recorded and it was doubtful whether it was admissible of record. "No possession was taken under it by the vendee; but for neither of these reasons," the court remarks, "was it the less operative between the parties." It was within the power of Turpin to record it, and equally within his power to take possession of the property at any time before other rights against it had accrued. The court added that the Acts of Massachusetts, from which state the case came, did not prescribe when the record must be made or possession taken, remarking further, that when made or taken the instrument takes effect as against third persons as well as between the parties, from the time of its execu-

tion unless intervening rights have been obtained. The court cites *Mitchell* v. *Black,* 6 Gray, 100, in which case it was ruled by the Supreme Court of Massachusetts that one who has taken bills of sale of merchandise from a debtor as security for money advanced, and who had allowed the debtor to sell portions of the merchandise in the usual course of his business as if he were the owner thereof, might take possession of it at any time in order to secure his debt, and that such taking of possession, though at a time when the debtor was known by himself and the creditor to be insolvent, was effectual, notwithstanding the state insolvency law, which contained provisions very like those of the Bankruptcy Act. The court held unqualifiedly that the bills of sale, absolute as they were in terms, though in fact intended only as a security and though unattended by possession of the property, and though not placed upon record, vested a complete title in the creditor, subject only to be defeated by the discharge of the debt or by some intervening right acquired before the possession was taken. (See also *Humphrey* v. *Tatman,* 25 Sup. Ct. Reports, 567, decided April 17, 1905.)

In the case before us the taking of the goods related back for authority to the time of the giving of the power on August 11, 1899. The formal mortgage given February 6, 1901, is of no importance in this case, as it did not give or take away any right or power to or from Hoffman, but left him with what rights or power he had. The delivery to and taking by Hoffman of the goods was not unlawful under the law of Montana, and, under the authority of the *Sawyer-Turpin Case,* was not an unlawful preference under the Bankruptcy Act. The Federal Supreme Court says the giving of the formally executed mortgage was a "mere exchange in the form of the security" and that the preference, if any, was obtained when the bill of sale was given long before. In the case at bar here, there was a change in the form of the security, or, as the lower court found, the formal mortgage was a continuation of the original security. The preference, if any, was as of August 11, 1899.

The judgment of the court below is affirmed.

*Affirmed.*

Mr. Justice Holloway, being disqualified, takes no part in the foregoing decision.