SCHWABACHER BROS. CO. v. PALMER et al.   (FIRST NAT. BANK, Garnishee).

(Fourth Division.   Fairbanks.   April 21, 1910.)

No. 1284.

1. PLEADING (§ 228*)—GARNISHMENT—EXCEPTIONS.

The filing of exceptions to the answer of the garnishee authorizes the garnishee to insist on a searching of the record to determine the sufficiency of the complaint against the garnishee. And, if the allegations are sufficient to sustain a cause of action on the part of the plaintiff against the garnishee, it will not be necessary to consider the sufficiency of the answer of the garnishee.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. § 228.*]

2. FRAUD (§ 64*)—QUESTIONS OF FACT.

The question of fraud or fraudulent intent in all cases arising under the Code of Alaska is a question of fact and not of law.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 65½, 67–71; Dec. Dig. § 64.*]

3. CHATTEL MORTGAGES (§ 188*)—FRAUDULENT CONVEYANCES (§ 172*).

A chattel mortgage to secure an actual bona fide existing debt given by a merchant on his stock of goods, which mortgage contains an agreement that the mortgagor may remain in possession and sell the same in the ordinary course of trade, is fraudulent and void as against creditors, but is valid as between the parties thereto.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393–404; Dec. Dig. § 188;* Fraudulent Conveyances, Cent. Dig. §§ 523–529, 542; Dec. Dig. § 172.*]

4. FRAUDULENT CONVEYANCES (§ 172*)—BILL OF SALE.

As between the parties, a bill of sale given by a merchant in possession of a stock of goods is valid, though given to one who holds a prior mortgage, which was void as to other creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 523–529, 542; Dec. Dig. § 172.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

5. FRAUDULENT CONVEYANCES (§ 263*)—PLEADING.

Allegations, in a complaint, which charges generally that the parties to a mortgage conspired fraudulently to defeat the claims of creditors, are to be limited by the specific facts stated in the complaint. The general words of fraud and conspiracy can have no more force and effect towards rendering the mortgage void than the truth, as disclosed by the specific allegations, will warrant.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 771–774, 776–779, 781; Dec. Dig. § 263.*]

6. CHATTEL MORTGAGES (§ 240*)—DISCHARGE—BILL OF SALE.

Where the owner in possession of a stock of merchandise has made a chattel mortgage thereon in favor of a bank, and thereafter executes a bill of sale of the property to the same party, it operates as a discharge of the chattel mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 505, 506; Dec. Dig. § 240.*]

7. FRAUDULENT CONVEYANCES (§ 219*)—BILL OF SALE—REMEDIES OF CREDITORS.

Where an actual bona fide existing debt was due and owing from a merchant to a bank, and the merchant conveyed his entire stock of goods by bill of sale in payment of the debt, and two years thereafter another unsecured creditor brought suit in garnishment on its judgment to recover from the bank alleging fraud and collusion, *held*, the bill of sale was valid as between the parties to it, and that, since the creditor had no lien on the goods at the time, he has no cause of action against the vendee in the bill of sale.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 646; Dec. Dig. § 219.*]

On exceptions to answer of First National Bank, garnishee.

On the 24th day of July, 1909, the plaintiff herein instituted an action against the defendants to recover the sum of $7,-745.77. The defendant appeared in said action and confessed judgment, and on the said 24th day of July, 1909, the plaintiff recovered judgment against the defendants for said sum in said action. Thereafter execution was issued upon said judgment, and the First National Bank of Fairbanks, Alaska, was duly garnished. In response to said garnishment, the said bank, through its officers, answered that it was not indebted to the defendants or either of them in any sum, and that it had

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

no money or property in its possession belonging to the defendants.

The plaintiff, not being satisfied with the answer of the garnishee, filed its allegations and interrogatories herein, and, among other things, alleged: That on the 12th day of November, 1906, and for a long time prior and subsequent to said date, the defendant Palmer and Field were partners engaged in conducting a general mercantile business in the town of Fairbanks, and on or about November 12, 1906, they became and were indebted in a large amount, to wit, in a sum exceeding $30,000 to divers and sundry persons, for goods, wares, and merchandise sold and delivered to them in the course of trade, and among the persons to whom the said defendants were so indebted was the plaintiff in this action, and that the judgment obtained against the said defendants was for and on account of said indebtedness; that the said defendants were in an embarrassed condition financially on said date, and unable to pay their debts, all of which was known to the garnishee, the First National Bank. The plaintiff further alleges that on, to wit, the said 12th day of November, 1906, said defendants and said First National Bank, colluding and conspiring and confederating together, and contriving how they might hinder, delay, and defraud the creditors of the said defendants, did cause to be made, executed, and delivered and recorded in the office of the commissioner and ex officio recorder of the Fairbanks recording district a certain paper writing purporting on its face to be a mortgage of personal property, wherein the said Palmer & Field purported to mortgage to one S. A. Bonnifield certain improvements on real estate and a large amount of goods, wares, and merchandise, being the stock in trade of the said Palmer & Field; that said paper writing purported to be a mortgage to secure the payment, when due, of five certain promissory notes alleged to have been given by the said Palmer & Field to said Bonnifield, all dated November 12, 1906, for $7,500, $7,500, $5,000, $7,-500, and $7,500, respectively, and due in 30, 60, 60, 90 and 90 days, respectively, after said date; that said mortgage on

its face provided that, until default be made in the payment of said sum, said Palmer & Field might remain and continue in the quiet and peaceable possession of the goods and chattels therein mentioned, and in the free and full use and enjoyment thereof.

The plaintiff further alleges that said Palmer & Field were not at any time indebted to the said Bonnifield personally in any sum whatever, but that they were indebted to said First National Bank in a large sum, the exact amount of which is to plaintiff unknown, and all the dealings of said Palmer & Field with said bank were by said bank made to appear as if having been had with said S. A. Bonnifield in order that said bank might charge usury and otherwise evade the provisions of the National Banking Acts.

Plaintiff further alleges that the property described in said mortgage was the stock in trade of the said Palmer & Field, a large amount of which had been recently purchased from the plaintiff and other creditors and was unpaid for, all of which facts plaintiff alleges were known to said First National Bank, and that, at the time of the making of said mortgage, it was understood and agreed by and between said Palmer & Field and said bank that said Palmer & Field should continue to sell said mortgaged property in the usual course of business and might retain the proceeds thereof or apply the same in such way as they might see fit, and that said bank would not take possession of any of such mortgaged property unless it should deem that its security was in danger.

Plaintiff further alleges that under and by virtue of said agreement, and with the knowledge and consent of the said First National Bank, said Palmer & Field did remain in the possession of said mortgaged chattels as owner both in fact and in name, until January 31, 1907, during which time they did, with the full knowledge and consent of the said First National Bank, sell and dispose of a large quantity of said mortgaged chattels, and applied the proceeds thereof to purposes other than the extinguishment of said mortgage debt, the value of the goods so disposed of being about the sum of $20,000.

Plaintiff further alleges that on January 31, 1907, the form of said alleged security was by agreement of said parties changed as follows: A bill of sale, absolute on its face, of such mortgaged chattels as had not been disposed of as aforesaid, was made, executed, and delivered by said Palmer & Field to said Bonnifield, acting for and in behalf of said First National Bank, and said Bonnifield, acting for and on behalf of said First National Bank, did on said date execute and deliver to said Palmer & Field a separate agreement, in which it was recited that the bill of sale aforesaid was only a mortgage to secure the indebtedness of Palmer & Field to said Bonnifield, and that the property mentioned in said bill of sale was then of the value of $64,300; that the debt then due from Palmer & Field to the said Bonnifield aforesaid was $42,794; that said bill of sale was placed on record.

The plaintiff further alleges that until on or about April 3, 1907, the said Palmer & Field, with the full knowledge and consent of said First National Bank, continued in the possession of said mortgaged chattels and continued to sell and dispose of the same, and with said full knowledge and consent applied the proceeds thereof otherwise than to the extinguishment of said mortgage debt; that, of the goods mentioned in said separate agreement, said Palmer & Field so disposed of goods of the value of about $21,000, and the remainder was just about enough to extinguish the said mortgage debt, and that the same was seized by said garnishee and sold, and the proceeds applied to the extinguishment of said debt.

The garnishee, First National Bank, replied to said allegations, denying the fraud on the part of the garnishee, and setting up two separate defenses, and to such defenses the plaintiff replied and also filed exceptions to the sufficiency of said answer of the garnishee.

L. P. Shackleford, of Juneau, for plaintiff.

A. R. Heilig, of Fairbanks, for garnishee.

LYONS, District Judge. The filing of exceptions to the answer of the garnishee authorizes the garnishee to insist on

a searching of the record to determine the sufficiency of the complaint against the garnishee; and, if the allegations are sufficient to sustain a cause of action on the part of the plaintiff against the garnishee, it will not be necessary to consider the sufficiency of the answer of the garnishee. 6 Enc. P. & P. 326; 31 Cyc. 338; 39 Cent. Dig. col. 1845; Metropolitan Trust Co. of New York v. Toledo, St. L. & K. C. Ry. (C. C.) 107 Fed. 628; First National Bank of St. Paul v. Nathan, 28 Minn. 150, 9 N. W. 626.

In determining the sufficiency of the allegations against the garnishee, four questions are presented: (1) Is the mortgage of November 12, 1906, from defendants to Bonnifield, fraudulent in law and therefore void; (2) does the bill of sale of January 31, 1907, supersede the mortgage of November 12, 1906; (3) is the bill of sale of January 31, 1907, fraudulent in law, and therefore void; and (4) does the fact that the garnishee took possession of the property described in said instruments prior to the plaintiff acquiring any lien thereon cure any defects contained in the mortgage or the bill of sale?

1. Our statute concerning the execution and recording of chattel mortgages (Carter's Ann. Alaska Code, c. 31) has been taken from the statutes of Montana, excepting section 315, which provides for the renewal of such mortgages, which section was taken from the statutes of Ohio. Section 311 provides:.

"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value, unless: First, the possession of such property be delivered to and retained by the mortgagee; or, second, the mortgage provide that the property may remain in possession of the mortgagor and be accompanied by an affidavit of all the parties thereto, or in case any party is absent from the precinct where such mortgage is executed, at the time of the execution thereof, an affidavit of those present, and of the agent or attorney in fact of such absent party, that the same is made in good faith, to secure the amount named therein, and without any design to hinder, delay, or defraud creditors, and be acknowledged and filed as hereinafter provided."

The plaintiff in this case contends that a mortgage on merchandise containing an agreement, either in the mortgage or

in a separate agreement, in effect that the mortgagor may remain in possession of a stock of merchandise and sell the same in the ordinary course of trade and appropriate the proceeds thereof as he sees fit, is fraudulent and void, and that the taking possession of such stock of goods by the mortgagee prior to the acquisition of a lien by any creditor can confer no rights upon the mortgagee, on account of the fact that the instrument which authorizes the seizure of possession of the property had its inception in fraud. To sustain that doctrine plaintiff cites several early Oregon cases, also Wait on Fraudulent Conveyances & Creditors Bills (3d Ed.) § 357; Wells v. Langbein (C. C.) 20 Fed. 183; Robinson v. Elliott, 89 U. S. (22 Wall.) 513, 22 L. Ed. 758. The Oregon cases merely hold that such a mortgage as hereinbefore described is void, but the Oregon Supreme Court has not held, so far as I have been able to ascertain, that possession taken under such a mortgage prior to the inception of a lien by any creditor will not cure the defect in the mortgage; nor does the Supreme Court of the United States, in the case last cited, decide what effect the taking of possession by the mortgagee would have upon such a mortgage or upon the rights of the mortgagee thereunder. But the text and the federal case last cited do sustain completely the doctrine contended for by the plaintiff; i. e., that such a mortgage is fraudulent in law and void.

It is true the plaintiff in this case alleges generally that the parties to the mortgage of November 12, 1906, conspired fraudulently to defeat the creditors of the mortgagor, but it would seem that such allegations of fraud are limited by the specific facts thereafter stated; that is, that there was a bona fide existing debt due from the defendants to Bonnifield or the bank which said mortgage was given to secure, that such mortgage was made a public record, and that its provisions allowed the mortgagor to control the property described in the mortgage as though it belonged entirely to himself and no lien existed in favor of the garnishee against the property therein described. Consequently the general words of fraud and conspiracy can have no more force and effect towards rendering the mortgage void than the truth as disclosed by

the specific allegations will warrant.   Is such a mortgage fraudulent in law under our statute?

Section 133 (Carter's Alaska Code, p. 379) provides:

"The question of fraudulent intent in all cases arising under the provisions of this Code shall be deemed a question of fact and not of law."

It may be admitted that a mortgage from the defendants to Bonnifield, as described in plaintiff's allegations, is void on account of the privileges granted to the mortgagor; but that is not tantamount to an admission that the instrument was fraudulent.   This question came before the Supreme Court of Montana in Rocheleau v. Boyle, 11 Mont. 451, at page 469, 28 Pac. 872, at page 878, and the court in that case said:

"In Brett v. Carter, 2 Lowell, 458 [Fed. Cas. No. 1,844], Lowell, J., of the United States District Court for Massachusetts, has given a most trenchant exposition of reasons opposed to the theory of 'constructive fraud,' or 'fraud in law,' as applicable to cases like the one at bar.   There is much able reasoning on both sides of the controversy.   But after much consideration we do not regard the case as involving the question of fraudulent intent, to be found by applying the principle of constructive fraud or fraud in law, so much as the question whether or not the parties, by the conditions which they entered into, or sanctioned by their conduct, made or failed to make a valid mortgage as to the whole or part of the property intended to be covered by the mortgage lien; or having made a good mortgage, so far as shown by the terms of the instrument, by mutual agreement, understanding, or permission the parties annulled some essential condition of the mortgage as to the whole or part of the property mentioned.   The subject of the mortgage being personal property, such conditions may be entered into, understood, or permitted, which render nugatory some essential condition of the intended mortgage as to the whole or part of the property; or such conditions may be expressed in the instrument, and although such conditions were entered into or permitted in good faith, nevertheless, when all the conditions are shown, the question arises whether or not the parties fulfilled the law as to making a mortgage; and this is a question of law.   It may be found without reference to the question of fraud that the parties fell short of making a mortgage, or, having made one, that they nullified it as to the whole or part of the property by other agreement, understanding, or permission touching the same; and this conclusion may be reached on considering the facts, without reference to the motive which prompted the acts."

Such mortgages as the one under consideration are given frequently by merchants in straitened circumstances, given

in perfect good faith, without any fraudulent intent whatever; and why should such a mortgage be considered fraudulent in law? It may be void as between the mortgagee and creditors, and may be perfectly good as between the parties to it. A mortgage that is not acknowledged according to law may be void as to creditors, without notice, because its recordation would not be constructive notice; but such a mortgage would not be fraudulent in law, and, if the mortgagee should take possession of the property described in the mortgage before any creditor acquired a lien thereon, such possession would unquestionably cure the defect in the mortgage.

In Etheridge v. Sperry, 139 U. S. 267, 11 Sup. Ct. 569, 35 L. Ed. 171, Mr. Justice Brewer said:

"Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is toward increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith; and it is at least worthy of thought whether the rulings made by the Supreme Court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes, without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments, and that, like the recording of a real estate mortgage, gives notice to all parties interested of the fact and extent of incumbrances. Why should a transaction like this be condemned, if made in good faith and to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor, in payment of a debt. If an absolute, why not a conditional, sale, with such conditions as he and his creditor may agree upon? As between the parties, no court would question this right or refuse to enforce the conditions. The interests of the general public are not prejudiced by any such transaction between debtor and creditor. Indeed, they are rather promoted by any arrangement under which the mortgagor can continue in business, for in 99 cases out of a hundred the taking of possession by a creditor results in closing the business and turning the debtor out of employment. The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relation between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations. Existing creditors may of course challenge the good faith of the transaction; but, if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent. So, if the question were open, or a new one, unaffected by any set-

tled law of the state, we incline to the opinion that the question is not one of law so much as it is one of fact and good faith, and that the decision of the Supreme Court of Iowa rests on sound principle."

See, also, Jewell v. Knight, 123 U. S. 426, 8 Sup. Ct. 193, 31 L. Ed. 190; Means v. Dowd, 128 U. S. 273, 9 Sup. Ct. 65, 32 L. Ed. 429; Jones on Chattel Mortgages (4th Ed.) §§ 178, 425; Stewart v. Hoffman, 31 Mont. 184, 81 Pac. 3, overruling Stewart v. Hoffman, 31 Mont. 184, 77 Pac. 689; First National Bank v. Stewart, 13 N. M. 551, 86 Pac. 622; Huntley v. Kingman, 152 U. S. 527, 14 Sup. Ct. 688, 38 L. Ed. 540; Frick & Co. v. Oats, 20 Okl. 473, 94 Pac. 682; Chaffee v. Atlas Lumber Co., 43 Neb. 224, 61 N. W. 637, 47 Am. St. Rep. 753.

2. But even conceding that the allegations against the garnishee are sufficient to show that the mortgage from the defendants to Bonnifield, of date November 12, 1906, is fraudulent and void, the question then arises whether or not the bill of sale of January 31, 1907, completely superseded the mortgage of November 12, 1906; and this brings us to a consideration of the second proposition.

It seems that there cannot be any serious question but what the bill of sale completely superseded the mortgage, according to the allegations against the garnishee, for it is alleged that the character of the security was entirely changed and a bill of sale executed conveying all the property remaining to Bonnifield, with the understanding that such bill of sale should operate as a chattel mortgage, and that the vendor should remain in possession and sell the mortgaged property in the ordinary course of trade, without any agreement or understanding that he should specifically account to the vendee for the proceeds thereof. There is no allegation that the mortgage of November 12, 1906, had any force and effect after the execution of the bill of sale; and the inevitable inference from the pleading is that the bill of sale superseded the mortgage and completely satisfied the latter or rendered it ineffectual.

It is not alleged that the bill of sale and accompanying agreement formed any part of the mortgage, and the effect

of that bill of sale, according to the pleading, was to discharge the mortgage. 9 Cyc. 593–595, and cases cited.

It is apparent from the pleadings that the bill of sale was given for the purpose of securing the same indebtedness as that secured by the mortgage; and it is also apparent that it conveyed the same goods, wares, and merchandise as were conveyed by the mortgage, and was given for the identical purpose as the mortgage, to wit, to secure the same bona fide existing indebtedness. It therefore becomes immaterial, in determining the sufficiency of the allegations against the garnishee, whether or not the mortgage of November 12, 1906, was fraudulent, because the same was superseded by the bill of sale of January 31, 1907, under which agreement the mortgaged chattels must have been sold by the bank according to the allegations against the garnishee, unless a later and separate agreement was made thereafter authorizing the bank to seize possession of the property, sell the same, and apply the proceeds towards the liquidation of its claim against the defendants.

3. We are next confronted with the question whether or not the bill of sale of January 31, 1907, was fraudulent and therefore void, not only as between the vendee and creditors, but also as between the parties to that instrument. It is not charged specifically that the bill of sale was fraudulently executed, or that the same was the result of a conspiracy between the parties thereto to defeat the rights of creditors. It does appear from the allegations against the garnishee that the bill of sale was intended as a mortgage, and that the agreement between the parties thereto provided that the vendor should retain possession of the property described in the bill of sale and continue to sell the same in the ordinary course of trade, without accounting to the vendee for the proceeds thereof.

According to the decided weight of authority, such a bill of sale or mortgage is void as between the vendee and the creditors; but it is good as between the parties thereto. It is not fraudulent, unless the parties thereto or one of them intended it as such. As before observed with reference to the

mortgage, it is ineffectual as a lien because, as held by the Supreme Court of Montana and other courts, it has not been executed according to law. Noyes v. Ross, 23 Mont. 425, 59 Pac. 367, 47 L. R. A. 400, 75 Am. St. Rep. 543. See, also, cases heretofore cited as to the validity of the mortgage of November 12, 1906.

The complaint against the garnishee on its face, therefore, unquestionably discloses the fact that the mortgage was superseded by the bill of sale, and that the bill of sale is void as between the parties. But it does not appear that the bill of sale is fraudulent and for that reason void, because, under our statute and the authorities heretofore cited, fraud is a question of fact and not of law, and, unless the pleadings or proof discloses the fact that a mortgage of merchandise was fraudulently made, it may be void, but is not necessarily tainted with fraud.

4. The question to be finally determined, therefore, is: What effect did the taking possession of the property under the bill of sale by the garnishee have, with reference to the rights of the vendee under the bill of sale? The complaint against the garnishee shows that on April 3, 1907, nearly two years before the commencement of this suit, the remaining property described in said bill of sale was seized by the vendee in the bill of sale and appropriated towards the satisfaction of a bona fide, existing debt. Under all the circumstances, it seems rather late to now question the appropriation of the proceeds of the sale of that mortgaged property, particularly in the light of the fact that the complaint avers that it was all appropriated towards the payment of a valid claim against the defendants. Certainly it does not appear from the complaint that the action of the garnishee in any way lessened the chances of the plaintiff in recovering its claim against the defendants. No effort was ever made during the continuance of the bill of sale and mortgage, by or on behalf of the plaintiff, to collect its debt, although both instruments were of public record. After the seizure of the property by the garnishee, there was no effort made by the plaintiff to prevent the appropriation of the proceeds of the property towards the pay-

ment of the debt of the garnishee against the defendants, and not until the expiration of nearly two years was any question raised as to the good faith of the dealings between the defendants and the garnishee.

In the case of Stewart v. Hoffman, supra, the Supreme Court of Montana quotes with approval from the Supreme Court of Massachusetts the following:

"The court added that the acts of Massachusetts, from which state the case came, did not prescribe when the record must be made or possession taken, remarking, further, that when made or taken the instrument takes effect as against third persons, as well as between the parties, from the time of its execution, unless intervening rights have been obtained. The court cites Mitchell v. Black, 6 Gray, 100, in which case it is ruled by the Supreme Court of Massachusetts that one who has taken bills of sale of merchandise from a debtor as security for money advanced, and who had allowed the debtor to sell portions of the merchandise in the usual course of his business, as if he were the owner thereof, might take possession of it at any time in order to secure his debt, and that such taking of possession, though at a time when the debtor was known by him and the creditor to be insolvent, was effectual, notwithstanding the state insolvency law, which contained provisions very like those of the bankruptcy act. The court held unqualifiedly that the bills of sale, absolute as they were in terms, though in fact intended only as security, and though unattended by possession of the property and though not placed upon record, vested a complete title in the creditor, subject only to be defeated by the discharge of the debt, or by some intervening right acquired before the possession was taken."

See, also, Garrison v. Street & Harper Furn. & Carpet Co., 21 Okl. 643, 97 Pac. 978, 129 Am. St. Rep. 799; Frick & Co. v. Oats, 20 Okl. 473, 94 Pac. 682; Will T. Little Co. v. Burnham, 5 Okl. 283, 49 Pac. 66; Jones on Chattel Mort. (4th Ed.) § 425, the concluding portion of which said section is as follows:

"The conclusions deduced from the foregoing examination of this subject are: That the doctrine of absolute fraud arising in a mortgage of merchandise from the mortgagor's retaining possession with the power of disposal in the usual course of trade is not supported by any preponderance of authority; that it is contrary to sound principles of jurisprudence; that it has no reason for its existence derived from general observation and experience; that it is contrary to sound policy; and that the qualifications of the doctrine made by leading courts have, in large measure, destroyed its force,

and are indicative that these courts wish themselves well rid of the whole of it."

See, also, Id., § 178; 6 Cyc. 1121; Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251, 6 Am. St. Rep. 32; Leech v. Arkansas, etc., 8 Kan. App. 621, 56 Pac. 134; Dolan v. Van Demark, 35 Kan. 304, 10 Pac. 848; Hausner v. Leebrick, 51 Kan. 591, 33 Pac. 375; Grimes v. McKee, 51 Kan. 704, 33 Pac. 594; Williams v. Miller, 6 Kan. App. 626, 49 Pac. 703; Gagnon v. Brown, 47 Kan. 83, 27 Pac. 104; Chaffee v. Atlas Lb. Co., 43 Neb. 224, 61 N. W. 637, 47 Am. St. Rep. 753; Kay v. Noll, 20 Neb. 380, 30 N. W. 269; Ayers v. Sundback, 5 S. D. 31, 58 N. W. 4; Francisco v. Ryan, 54 Ohio, 307, 43 N. E. 1045, 56 Am. St. Rep. 711; Second Nat. Bank v. Gilbert, 174 Ill. 485, 51 N. E. 584, 66 Am. St. Rep. 306; Oriental Bank v. Haskins, 3 Metc. (Mass.) 332, 37 Am. Dec. 140; Peabody v. Landon, 61 Vt. 318, 17 Atl. 781, 15 Am. St. Rep. 903.

The foregoing authorities fully sustain the doctrine that seizure of possession by a mortgagee prior to the acquisition of any lien by creditors will render effectual such mortgage as the complaint against the garnishee herein describes the bill of sale of January 31, 1907, to be.

A fair construction of the complaint cannot warrant the conclusion that it states a cause of action against the garnishee. The exceptions to the answer of the garnishee, which authorize a complete searching of the record, puts the plaintiff in the position of being compelled to sustain its allegations against the garnishee as against a demurrer, and a complaint tested by demurrer must be construed most strongly against the pleader. Cedersen v. O. R. & N. Co., 38 Or. 343, 62 Pac. 637; Graham v. Merchant, 43 Or. 294, 72 Pac. 1088.

It follows that the proceedings against the garnishee must be dismissed, unless plaintiff further elects to amend its complaint, permission for which amendment is hereby granted.